THE STATE OF KANSAS V. JAMES MAYBERRY, *et al.*    33  441
                                                    51  703

1. LIBEL; *Reference to Party.*   In order that an article published in a newspaper should be held to be libelous as to a particular person, it is necessary that the language of the article should be such that persons seeing it and reading it should, in the light of surrounding circumstances, be able to understand that it referred to such person; but *held,* that the article in the present case answers this description.

2. ———— *Libelous Words.*   The following words, published in a newspaper, if false and malicious, as they are alleged to be, are, in Kansas, and under the circumstances of this case, libelous, to wit: "The editor of the *Chronicle* has been intoxicated on several occasions, and that, too, after he was elected to the legislature as the champion of prohibition."

3. ———— *Prosecution; Evidence.*   In a criminal prosecution for libel, where the defendant is charged with having published that the prosecuting witness had "been intoxicated on several occasions," the defendant may prove, by witnesses acquainted with such prosecuting witness, that they had seen him "acting as though he was intoxicated."

*Appeal from Osage District Court.*

PROSECUTION for libel.   At the October Term, 1883, *James Mayberry* and another were convicted, and sentenced to pay a fine of $25 each, and the costs of the suit.   They appeal. The facts appear in the opinion.

*Ellis Lewis,* for appellants.

*W. A. Johnston,* attorney general, and *Edwin A. Austin,* for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution for libel. The defendants, James Mayberry and June B. Mayberry, were

charged with the offense of libeling John E. Rastall, the editor of the *Osage County Chronicle,* and were convicted, and sentenced to pay a fine of $25 each, and the costs of the suit; and from this conviction and sentence they now appeal to this court.   The alleged libel was an article published in the *Osage County Democrat,* a newspaper published in the city of Burlingame, Osage county, Kansas, of which newspaper the defendants were the editors and proprietors.   The said article read as follows:

.    "CHARACTERISTIC OF HIM. — The sneaking innuendo thrown out by the *Chronicle* last week at ex-Gov. Robinson and Col. Glick, is characteristic of the hypocritical puppy who wrote it.   Both gentlemen alluded to by our subterranean contemporary are too well known and too highly esteemed to be affected by cowardly insinuations coming from a source so notoriously unreliable as the *Chronicle.*   Coarse insinuation is the favorite weapon of the poltroon, and this accounts for the constabulary organ's use of it.

"Upon assuming editorial management of this paper we mentally resolved never to indulge in personalities, except for the purpose of exposing wrong, or subserving the ends of justice, and consider it no violation of our rule when we state that the editor of the *Chronicle* has been intoxicated on several occasions, and that, too, after he was elected to the legislature as the champion of prohibition.   We have evidence in our possession of the truth of the above statement; and give it to the public that they may know what kind of a creature it is that indulges in covert insinuations against such men as Gov. Robinson and Col. Glick, and the large and (with the exception of Rastall and a few kindred spirits) respectable audience that gave them such a hearty greeting."

In the court below the defendants moved to quash the information upon which they were charged, upon the ground that it did not state facts sufficient to constitute a public offense, which motion the court overruled, and the defendants severally excepted; and this is the first ruling of the court below of which the defendants now complain.

The defendants claim that the information is insufficient for the following reasons: First, "that there are no averments in the information, no statement of any such facts as make it ap-

parent that the persons who knew him would on reading the article copied in the information perceive that John E. Rastall, the prosecuting witness, was referred to or criticised;" second, that "the facts, if properly averred or stated, are insufficient to constitute a libel."

Of course, in order that the foregoing article should be held to be libelous as to John E. Rastall, it is necessary that the language of the same should be such that persons seeing it and reading it should, in the light of surrounding circumstances, be able to understand that it referred to Rastall; but we think the article answers this description. The words "Chronicle" and "editor of the Chronicle" and "Rastall," and other words used in the article referring to Rastall and his newspaper, make it very clear that John E. Rastall, the editor and publisher of the *Osage County Chronicle*, a newspaper published in Osage county, Kansas, was intended. Besides, the information charges that the alleged libelous article was published "of and concerning the said John E. Rastall," and a profusion of innuendoes is inserted in the information, making it clear beyond all possible doubt that Rastall was the party intended by the article. And the article itself is good English, and not obscure or enigmatical, or difficult of comprehension.

We also think that the matter contained in the article, if false and malicious, as is alleged in the information, is libelous. The article charges "that the editor of the *Chronicle* has been intoxicated on several occasions, and that, too, after he was elected to the legislature as the champion of prohibition," and the article also uses many epithets in connection with the above charge, "tending to provoke him to wrath, or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence or social intercourse." And the information also alleges that all the foregoing charges against Rastall were false and malicious. In this state —

"A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath, or expose him to public hatred, contempt or ridicule, or to deprive him of the

benefits of public confidence and social intercourse," etc. (Crimes and Punishments Act, § 270.)

But "the truth may be given in evidence to the jury; and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused shall be acquitted." (Const., Bill of Rights, § 11.)

It is also claimed on the part of the defendants that the court below erred in excluding certain evidence. The record with respect to this matter reads as follows:

"The state gave evidence, written and oral, tending to show the allegations contained in the information, and then rested; that thereupon the defendants offered and produced competent witnesses who were sworn and testified in said cause, and gave testimony tending to prove that John E. Rastall had been intoxicated as alleged in the publication set forth in the information, and thereafter the defendants offered and produced George Hoover, a competent witness in said cause, and he was duly sworn to testify in said cause; and the said George Hoover testified as follows: 'I reside in Burlingame; have been a resident of Osage, off and on, for about twenty years; am acquainted with John E. Rastall.' Question by defendants' counsel: 'Did you ever see him under the influence of intoxicating liquors?' Answer: 'Not that I know of; no, sir.' Question: 'What did you say?' Answer: 'Not that I know of.' Question by defendants' counsel: 'Well, did you ever see him when he acted as though he was under the influence of liquor?' To this question the state objected, as incompetent, and irrelevant and immaterial. Question by defendants' counsel: 'I will ask you whether you ever saw him acting as though he was intoxicated?' To this question the state objected, and the court sustained said objection, and refused to allow the witness to answer said question by the counsel for said defendants; to which ruling of the court the defendants at the time excepted. Whereupon the defendants, by their counsel, Ellis Lewis, offered to prove by said witness, George Hoover, that both before and after the election of John E. Rastall to the legislature, that is, after the 5th and 12th days of October, 1882, and prior thereto, the witness saw John E. Rastall acting as though he was intoxicated; and also, defendants offered to prove by said witness that said John E. Rastall, at both these times, both before and afterward, acted as this witness says he, the witness, acted when he, the wit-

ness, was intoxicated.  To which testimony the state objected, and the objection was by the court sustained, and said testimony excluded by the court; and the defendants at the time excepted to the ruling of the court in sustaining said objection and excluding said testimony."

We can scarcely understand why the court below refused to permit the defendants to show by the witness Hoover that he saw Rastall "acting as though he was intoxicated." The witness had been a resident of Osage county, off and on, for about twenty years; he was acquainted with Rastall; had worked with him in the same office for six or seven months; and intoxication may be proved by showing how the person supposed to be intoxicated acted; and the witness may not only state how the supposed intoxicated person acted, but he may also state whether he appeared to be intoxicated, or not. (*Castner v. Sliker*, 33 N. J. L. 507; *People v. Eastwood*, 14 N. Y. 565;) and the witness may give his opinion as to whether the supposed intoxicated person was intoxicated, or not. (Lawson on Expert and Opinion Evidence, 473, *et seq.*, and cases there cited; Rogers on Expert Testimony, 5; 1 Greenl. Ev., § 440*a*.)

It does not appear that any objection was made to the witness himself because of any supposed incompetency on his part to testify with respect to this matter, but the objection was made to the testimony itself as being incompetent, irrelevant, and immaterial.  Any person is competent to testify with regard to the acts of another which he has seen; he is competent to testify whether such person acted as though he was intoxicated, or not; and he may give his *opinion* with reference thereto. (See the authorities above cited.)  All persons of sufficient age and understanding are supposed to have had sufficient experience for this purpose.  We think the evidence excluded was competent, relevant, and material.  The gist of the alleged libel was, that the defendants had falsely and maliciously published that Rastall had been *intoxicated*.  Now, was it true or false that Rastall had been intoxicated?  The defendants, under the constitution, had the right to prove that it was true,

and the evidence which they offered to introduce tended to prove the same.

We think the court below erred in excluding this evidence, and for this error its judgment must be reversed, and the cause remanded for a new trial.

HORTON, C. J., concurring.

JOHNSTON, J., not sitting.