(92 South. 144)

No. 24495.

### JONES v. MODISETTE et al.

### In re MODISETTE et al.

(Nov. 28, 1921. Rehearing Denied April 24, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Libel and slander ⬤⇒50—Allegations as to failure to account for check not libelous when probable cause existed.**

Allegations in a suit for an injunction that a certified check filed by a bidder on a contract with the police jury had not been accounted for, were not libelous, though no such check was ever given, where there was probable cause for believing that it had been given and not accounted for.

**2. Libel and slander ⬤⇒38(3) — Allegations charging wrongdoing on part of police jury not libelous as to member not participating.**

Allegations in a suit against the police jury and others that fraudulent conspiracies existed between the police jury or some of its members and its engineer on the one hand and contractors on the other, resulting in the misappropriation of public funds, etc., were against the police jury as a body, and not libelous as to a member of the police jury who did not participate in the wrongdoing charged.

**3. Libel and slander ⬤⇒38(3)—Allegations of illegal action on part of police jury held not libelous.**

Allegations that a police jury's engineer was not licensed, and the contract with him was null, and payments under it illegal, and that there had been overpayments to contractors, resulting in individual liability on the part of members of the police jury and prayers based thereon, though not solidly founded in law, were not libelous.

**4. Libel and slander ⬤⇒10(1) — Charge that members of police jury made overpayments in violation of oaths not libelous.**

Members of the police jury acquiescing in overpayments under road construction contracts violate their oaths of office, though entirely free from moral guilt, and it is not libelous to charge such overpayments "in violation of their oaths of office."

**5. Libel and slander ⬤⇒38(3)—Allegations and prayers directed against members of police jury held not to show that libelous allegations were also directed against them individually.**

Though, in a suit against a police jury, allegations and prayers asserting a right to an injunction and to recovery against the members of the police jury in solido were necessarily against such members individually, allegations of fraudulent conspiracies to misappropriate public funds, etc., were not necessarily against them individually where they could be read in connection with nonlibelous charges of overpayments, lack of qualifications, misconduct, and graft on the part of an engineer, etc.

**6. Libel and slander ⬤⇒50—Suit for injunction against payments under contracts by police jury held supported by probable cause.**

Defendants who sued a police jury to annul road construction contracts, and enjoin pay-

ments thereunder, *held* to have had probable cause for an injunction against further payments, and hence not liable as for libel.

Writ of Review to Court of Appeal, Parish of Jefferson Davis.

Action by Arthur T. Jones against J. O. Modisette and others. Judgment for plaintiff, on defendants' appeal, in the Court of Appeal, and defendants bring a writ of review. Judgment set aside, and suit dismissed.

E. D. Miller, of Jennings, John T. Hood, of Welch, and McCoy & Moss, of Lake Charles, for plaintiff.

Philip S. Pugh, of Crowley, and Modisette & Adams, of Jennings, for defendants.

By the WHOLE COURT.

PROVOSTY, J. This case is here on writ of review to the Court of Appeal.

The parish of Jefferson Davis voted and issued $500,000 of bonds for public roads, and entered into contracts for the construction of the roads and the furnishing of the necessary materials. Many citizens of the parish became dissatisfied at the manner in which the contractors were carrying out their contracts. It appeared to many that the police jury was not exercising proper surveillance, and not holding the contractors to their contracts, and suspicion grew that graft might be at the bottom of this laxity, and rumors to that effect became rife. A public meeting was held at which a committee was appointed to set on foot and have charge of an investigation. As the result the members of this committee and other public spirited citizens, to the number of 52, filed suit to annul the contracts and enjoin any further payments under same. The suit was dismissed on exception, and thereupon the present suit was filed. It is for libel, and is based upon certain of the allegations contained in the petition in the other suit, and is against 5 of the plaintiffs therein, and by one of the members of the police jury.

151 La.—21

[1] By the advertisement for bids on the work a certified check equal to five per cent. of the estimated contract price of the work was required to accompany each bid. At the time when the public meetings were held, and until some time after the filing of the injunction suit, the impression prevailed that such a check had been deposited with the police jury, and that its amount was $5,000. At one of the public meetings two of the members of the police jury were questioned as to this check, and could give no account of it. One of them said that he did not know what had become of it; that he believed that it had been returned to the contractor at the time of the closing of the contract when the application for bond had been made to the surety company. The other said that he did not know anything about this check; that he had never seen it. The contractor supposed to have given the check had never furnished bond.

In connection with this check, the matter alleged to have been libelous is set out in the petition of the injunction suit as follows:

"(25) That in said contract, the Alexandria Gravel Company was to furnish a bond for the faithful performance of its contract in the full sum of $30,000.

"(26) That the said Alexandria Gravel Company did not, and has not to this day, executed any bond, or other obligation, in the sum of $30,000, or any other sum, for the faithful performance on its part of the said contract.

"(27) Petitioners further show that the certified check, filed by the said Alexandria Gravel Company, the exact amount of which petitioners are not informed, but verily believe that the same exceeded the sum of $5,000, was not and has not been accounted for by the police jury, and which, under the provisions of the law, was forfeited to the parish by the bidder on its failure to furnish bond, as provided in the contract, within 10 days after the acceptance of its bid."

It turned out that no such check had ever existed; that the requirement of the advertisement for bids had never been complied with in that respect.

The effect of this discovery, however, has not been to render the said allegations libelous. There was certainly probable cause for believing that a check in some amount had been given, and that it had not been accounted for.

The other allegations complained of as libelous read as follows:

"Article 42: Petitioners further show that they have good and just cause and reason to believe, and do verily believe, that there exists collusion and a fraudulent conspiracy, or conspiracies, between the police jury or some of its members, particularly George Hathaway and J. S. Treme, and the engineer on the one hand, and the Alexandria Gravel Company on the other; between the police jury and the engineer on the one hand and J. N. George & Sons on the other, the results of which are a fraud upon the public and the taxpayers, and result in damages and injury to the public, especially and particularly in the diverting, converting, misapplying, and misappropriating and illegally paying out of the public funds to J. N. George & Sons, the Alexandria Gravel Company, Col. W. L. Stevens, and other parties, in violation of the contract, in each instance, and contrary to the laws of this state.

"Article 43: Petitioners further show that, relying upon information and belief, and predicating this allegation upon such information and belief, they now allege that there exists an unlawful conspiracy and combination, or conspiracies and combinations, to all of which the police jury and the engineer are parties, whereby the public moneys and funds are, to the knowledge of these officials and servants of the public, illegally disbursed and expended, all to the great injury and damage of the taxpayers in general of Jefferson Davis parish, and especially and particularly to your petitioners herein.

"Article 44: Petitioners further show that the said police jury has paid to the said J. N. George & Sons a pretended claim for loss of profits on alleged long hauls, and because that certain divisions or roads requiring short hauls were not built and constructed, as called for in their contract, the full sum of $16,000, and purposes to pay the further sum of approximately $20,000 to the said J. N. George & Sons, without any consideration whatever contrary to the law and in violation of their official oaths of office."

"Article 47: Petitioners further show that, because of the wrong, collusion, and fraud of the police jury and the engineer with the contractors for material and roads, they are entitled, after a hearing herein, to a writ of injunction, upon petitioners furnishing bond, ordering and restraining the police jury of the parish of Jefferson Davis from paying out any more of the public funds on the contracts herein referred to to either Col. W. L. Stevens, the Alexandria Gravel Company, J. N. George & Sons, the Healy Construction Company, or to any other person, firm, corporation or association."

These allegations were true as to one member at least of the police jury; but plaintiffs in that suit, defendants in this, had no reason to believe or suppose that the plaintiff in the present suit, Jones, had participated in any way in the graft and corruption; they knew him to be an honest man, held him in esteem, and bore him no malice or ill will.

[2] One defense to the present suit, and the only one needing to be noticed since it disposes of the case, is that the said allegations were made against the police jury as a body, and not against the plaintiff, Jones, individually; and hence, that he individually cannot be said to have been libeled.

This defense is, we think, well founded. The allegations are against the police jury as a body; and, as that body acts by majority vote, and through agents of its own appointment, no member has been individually charged when the accusation is against the body as a body.

Indeed, in the present case the allegation in article 42 is so worded as to acquit some, if not most, of the members; for the charge is that the alleged fraud has been between "the police jury or some of its members * * * and the engineer," not between all of the members of the police jury, and the engineer.

This distinguishes the case from Levert v. Daily States Co., 123 La. 609, 49 South. 211, 23 L. R. A. (N. S.) 726, 131 Am. St. Rep. 356, where, very evidently, from the publication as a whole, every member was aspersed, the court finding as a fact that—

"The libel not only assailed the corporate action of the board, but impeached the integrity of every individual member who participated in the proceedings.".

The case falls under the rule that—

"Where libelous statements are made against an aggregate body of persons, an individual member not specially included or designated cannot maintain an action, for this among other reasons, that the body may act very corruptly or disgracefully, yet the individual may have been in the minority and may have opposed the measure alluded to." Newell on Slander & Libel (7th Ed.) p. 327, § 291; Hyatt v. Lindner, 133 La. 623, 63 South. 241, 48 L. R. A. (N. S.) 256.

In behalf of plaintiff it is contended that the hereinabove transcribed allegations point to plaintiff individually, especially when read in connection with articles 49 and 50 and the prayer of the petition. The articles here named read:

"Article 49. The right to recover against the members of the police jury personally and in solido for the illegal expenditures of public funds be specially recognized, reserved, and ordered enforced in appropriate proceedings.

"Article 50. Petitioners further show that they are entitled to a rule herein on the police jury as a body and on each individual member thereof to show cause why a writ of injunction should not issue herein restraining them and each of them from paying out any more of the public funds under said contracts."

The prayer is for the citation of the police jury, the engineer, and the two members of the police jury charged in article 42 of the petition with collusion and fraud, and for judgment against the police jury and the engineer annulling the contract between them; and the prayer is further that—

"The police jury and the individual members thereof be ordered to show cause * * * why a writ of injunction should not issue restraining the police jury from paying out any public funds under the contracts hereinabove referred to; and the prayer is further that * * * there be judgment against the police jury and the individual members thereof enjoining the payment directly or indirectly by the police jury of any of the public moneys under any of the contracts hereinabove referred to."

[3] These allegations and prayers affecting the members individually were in pursuance of allegations not transcribed herein, by which it was set forth that the engineer was not a licensed engineer; that as a consequence the contract with said engineer was null, and all payments under it illegal, and that there had been overpayments to contractors, and that, as a further consequence, the members of the police jury were individually liable for the reimbursement of the moneys so paid. These allegations and prayers may not have been very solidly founded in law, but we can discover in them nothing libelous of the plaintiff and his fellow members of the police jury.

[4] There can be no doubt that the phrase, "in violation of their oaths of office," found in article 44, bears upon the membership individually; but the matter charged as "in violation of their oaths of office" is specifically the overpayment alleged in the article itself, and nothing else, and this overpayment was a violation of the official oaths of the members. It was so because the official duty of a member, which he takes oath to perform, is, among other things, to see to it that overpayments are not made to contractors. A member who, instead of opposing such an overpayment, acquiesces in it, violates his oath of office. His doing so may be entirely free of moral guilt, consistent with perfect innocence, because of his having been unaware of the wrong; but, all the same, it constitutes, technically at least, a violation of official duty, or oath of office.

[5, 6] As for articles 49 and 50, and the prayers of the petition bearing upon the members individually, they have to be read, not necessarily in connection with the charges of article 42 and 43, but in connection with the allegations of overpayments contained in article 44, and in other articles which are not transcribed in this opinion,

and also in connection with the allegations of lack of qualification, misconduct, and graft on the part of the engineer, and, in the light of the following resolution adopted unanimously by the police jury after the frauds in question had been brought to its attention:

"Be it resolved, that this police jury does hereby declare that the protest or charges of the said alleged citizens' committee are unfounded and unwarranted, and that they express their confidence in the honesty, integrity and efficiency of their engineer, Col. W. L. Stevens. Unanimously adopted."

And in the light also of the following testimony given by plaintiff on the trial of the present case, showing the mental attitude of the members of the police jury even after the whole matter had been ventilated in the suit brought to oust the members of the police jury, in which one member, Hathaway, had been actually ousted on the grounds which formed the basis of the suit complained of in the present suit as having been libelous, to wit:

"Q. Mr. Jones, you have that same high opinion of both of these gentlemen you have just mentioned, have you not?

"A. I do not like to say.

"Q. Well, now, Mr. Jones, isn't it a fact that these proceedings that have been instituted by the citizens' committee against the police jury and the engineer and Mr. Hathaway hasn't changed your opinion in any particular as to their worth and standing, has it?

"A. Not the proceedings instituted against the police jury, that some facts that have come out or evidence that has come out, that the citizens' committee considered (concealed) from us at all times, that has changed my opinion.

"Q. What is that evidence?

"A. It is evidence like letters you are introducing and statements that you purport that Mr. Worthington made, and things of that kind.

"Q. Mr. Jones, isn't it a fact that, after this information did become public, that you still persisted in saying publicly and privately, in saying that you did not believe that Col. Stevens and Mr. Hathaway were guilty?

"A. Take evidence to convince, men that I have always supposed were honest—I couldn't say that exact minute—

"Q. Mr. Jones, isn't it a fact that you held the same opinion with reference to Col. Stevens and Mr. Hathaway when you testified in the ouster suit that you had held heretofore?

"A. The only—

"Q. Just answer the question Yes or No, Mr. Jones, and then explain.

"A. What is the question?

"Q. Isn't it a fact that you held the same opinion as to Mr. Hathaway and Col. Stevens when you testified in the ouster suit that you had held before? In other words, did they not stand as high in your estimation as they had done before?

"A. Yes.

"Q. Mr. Jones, isn't it a fact that everything you know with the exception of the letter signed by Mr. Hayes, was known by you at the time you testified in the ouster suit? Now, is that not true?

"A. No.

"Q. What facts are there now that you have learned since, Mr. Jones?

"A. The letter and the evidence that I heard since then, and I wanted to make sure in my mind just how that dictaphone conversation was framed up and got.

"Q. I will ask you, Mr. Jones, when you got the information as to how it was framed up?

"A. How was that?

"Q. I will ask you when you learned that the dictaphone conversation was framed—I believe you said up?

"A. Why, I learned that at the trial, but I wanted to investigate the method used. I wanted to satisfy myself as to the methods used.

"Q. Well, all right; isn't it a fact that the New Orleans Item had a report of this conversation, and all of the facts that you know about it now, in that paper long before you testified in the ouster suit, and did not you read it?

"A. The Item?

"Q. Yes.

"A. They were in the Item.

"Q. And you read it?

"A. I was not quite sure where the Item got it.

"Q. You read it?

"A. Yes; I read it."

And in the light also of the following report of the grand jury:

"We, a majority of your grand jurors, wish to say that we believe from the evidence before us that there has been graft and bribery used in the purchase of gravel and in the building of public roads, but we find that the evidence is insufficient to justify the finding of true bills."

Under the circumstances, it cannot be said that there was not probable cause for an injunction against further payments; and as the injunction had necessarily to be against the members individually, the reference had necessarily to be to them individually. But, because the reference which had thus to be to the members individually in this connection was to them individually, it does not follow that it was likewise so throughout the petition. There is no such solidarity between the allegations of a petition as that all need necessarily bear alike upon all the parties mentioned in the petition.

The judgment of the Court of Appeal is set aside, and the suit of plaintiff is dismissed, at his cost in all the courts.

OVERTON, J., recused.

Rehearing refused by the WHOLE COURT.