Montgomery Ward & Co., Inc., *et al. v.* Skinner.

(In Banc. March 25, 1946.)

[25 So. (2d) 572. No. 36023.]

R. H. & J. H. Thompson and Fulton Thompson, all of Jackson, and Charlotte E. Gauer, of Chicago, Ill., for appellants.

50

Barnett, Barnett, Jones & Stone, of Jackson, for appellee.

**Butler & Snow,** of Jackson, for appellee.

54

Argued orally by **J. H. Thompson**, for appellants, and by **Ross R. Barnett**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

From a judgment for both actual and punitive damages in favor of the plaintiff, Mrs. Hattie E. Skinner, against the defendants, Montgomery Ward and Company, Inc., and its assistant manager, R. H. Burnie, in a suit for slander, the defendants have prosecuted this appeal.

The first question presented is whether or not the defendants were entitled to a directed verdict in their favor. And it is well-settled that every fact which the evidence establishes directly or by reasonable inference must be considered as proved against a party asking for a peremptory instruction. Stricklin v. Harvey, 181 Miss. 606, 179 So. 345, and the numerous decisions of this Court therein cited.

On December 5, 1944, there was found underneath a plaque at the cash register, in the toy department of the defendant corporation's store in Jackson, a twenty and a ten dollar bill in currency, together with an eight dollar check of a customer, which some employee in said department had evidently removed from the cash register for the purpose of getting money of smaller denominations with which to make change and had carelessly or negligently failed to replace. At that time, the plaintiff and Mrs. Jane Blakely, Mrs. Ralph Higgins, R. E. Catchings and Mrs. Mattie Darby were the sales clerks in the toy department under the supervision of the defendant Burnie. The money was found by the said Mrs. Jane Blakely, who promptly reported such fact to Catchings,

and he reported the incident to the defendant Burnie, who thereupon in turn reported it to the general manager, R. W. Prenger. After some discussion of the matter between the latter two, the general manager instructed the defendant Burnie to ascertain who was to blame for misplacing the money, and to discharge "the ones" that he considered guilty. This instruction was given him after he and the general manager had decided to exonerate the said R. E. Catchings and Mrs. Darby from blame on the untenable ground so far as the plaintiff was oncerned, that those two knew better how to manipulate the cash register and could have replaced the money therein, whereas the said Burnie admitted as a witness at the trial that "I would say that Mrs. Skinner (plaintiff) knew as well how to ring the cash register as Mrs. Darby and Mr. Catchings," but that "I would also say that Mrs. Higgins and Mrs. Blakely did not know how to ring it as well." Then too the limitation of the blame to the three accused wholly ignored the obvious fact that either of the five could have forgotten to replace the money in the cash register regardless of how well they knew how to do so.

The conclusion was reached by the general manager and the defendant Burnie that the blame lay between the plaintiff and the said Mrs. Jane Blakely, although she had reported the finding of the money as aforesaid, and Mrs. Ralph Higgins. And, while it does not appear that either of them had previously been careless in that regard, the defendant Burnie, instead of calling these three ladies to his office in the toy department at the closing time that afternoon, or during the next morning on a proper occasion, and discussing the matter with them either separately or collectively, out of the presence and hearing of third persons, and advising them that he had concluded that one of the three was guilty of the act of carelessness involved and requesting that whoever it was must not let it occur again, saw fit to wait until some time during the next afternoon and then after first dis-

cussing the matter separately with each of them in the presence and hearing of customers in the toy department, when each of them thereupon denied knowing anything about how the money came to be placed underneath the plaque, and although he had no evidence whatever as to the guilt of either of them individually he finally addressed them all collectively at or near the cash register, at a time when at least two of them were waiting on customers, and uttered the following defamatory statements, to-wit: "If one of you three don't tell me where you got it, I will fire the three of you. All damned three of you are going out of here this afternoon without a recommendation and with a blot on your record and character. You can give me as a reference if you like, but when the parties you want to clerk for or want to hire to calls me, I will tell them they are hiring you at their own risk, that while working here you trifled with Montgomery Ward's money. You are one of three who trifled with the money. You all deny it, but one of you did it. You laid it and hid it there with ill intentions and you are fired without a recommendation."

It is undisputed that the three ladies in question testified that the foregoing statements were made. In fact, the appellants concede in their brief that "the testimony of the three ladies, . . . was substantially to the same effect, as follows:", and then sets forth the identical language quoted in the next preceding paragraph of this opinion, and which is the same in every respect as the language declared upon in the declaration herein.

It is true that the plaintiff is limited in her right of recovery to the charge made in the declaration, and which is admitted to have been proved insofar as the testimony on behalf of the plaintiff is concerned. However, it was competent for the plaintiff to prove such additional facts and circumstances as would throw light on the question as to whether or not the third persons present would reasonably understand that the speaker intended to reflect upon her.

It would unduly prolong this opinion to set forth herein all of the testimony contained in the record bearing upon whether or not the plaintiff was individually slandered by what was said. We shall therefore quote such of the testimony on behalf of the plaintiff, and in its proper setting, which we deem to have a direct bearing on that issue, and will concede the extent to which it was denied by the defendants, but keeping in mind that we are discussing the question as to whether or not the proof on behalf of the plaintiff is sufficient to withstand the motion of the defendants for a directed verdict in their favor.

On the occasion complained of, the proof on behalf of the plaintiff disclosed that there were about eight or ten customers present and doing some shopping; and that some of them "stopped and listened, came up close to where we were"; that there were "probably four or five of them" who listened to what the defendant Burnie said. However, it was denied by the defendant Burnie and Mr. Catchings that there were any customers present on this December afternoon in the toy department except a gentleman who was being shown a baby buggy by Mr. Catchings.

That the defendant Burnie was speaking in a loud voice on the occasion complained of, was very angry, and that the accusation was made to the plaintiff both at the time when she was being separately addressed and when the three ladies were being addressed collectively, the plaintiff having testified that "Mr. Burnie shook his finger in my face. He was white in the face when he was talking to me. That is why I knew he was angry." And the plaintiff was corroborated by Mrs. Blakely when the following question was asked and answered: "Well, who, if anyone, was he looking at or pointing at when he said 'You hid the money there with ill intent and you are trifling with Montgomery Ward's money', who was he looking at and pointing at at that time?" Answer: "Mrs. Skinner." This was also denied by the defendant Bunrie,

and it was a question for the jury to decide the issue thus raised.

No proof was offered by the defendants to show that the plaintiff or either of the two ladies were responsible for misplacing the money, other than the surmise given by the defendant Burnie as to why he concluded that it lay between the three of them. And the jury could conclude from the evidence that, even though Mr. Catchings and Mrs. Darby may have been more familiar with the operation of the cash register than the three persons to whom the slanderous utterances were addressed, nevertheless either of them, although previously exonerated by the defendant Burnie and the general manager, could have carelessly failed to replace the money in the cash register, even though they may have known how to do so, if they had removed the same for the purpose of making change.

All three of the ladies in question were discharged at the end of that day as threatened, and all three of them went out of the store at closing time with a "blot on their record and character," as the defendant Burnie had predicted.

In the meantime, the plaintiff again had assured the said defendant Burnie that she was not guilty and appealed to him for a recommendation in order that she might thereafter obtain employment elsewhere, and he admits in his testimony during this conversation with the plaintiff that he stated to her, among other things, that "we do not hold you alone responsible for it;" and she testified that he further said, when talking to her individually in the toy department of the store, that "when you start trifling with Montgomery Ward's money you get my dander up." He also denied having made this statement, and there was presented to the jury for decision the issue in regard thereto.

And, the proof on behalf of the plaintiff further discloses that during the afternoon she appealed to the general manager of the store, stating what the defendant

Burnie proposed in regard to discharging her, and that thereupon the general manager said: "I know all about it, Mrs. Skinner. Mr. Burnie is carrying out my orders. I told Mr. Burnie to fire the ones he considered guilty, and guarantee against it happening again." And, it appears that the defendant Burnie later reported to the general manager that he had carried out these instructions.

It is true that the defendants had the legal right to discharge the plaintiff, and for no reason at all if they saw fit to do so, and without a recommendation, but they had no right to slander either the plaintiff or the other two ladies without any proof of wrongdoing on their part.

The court instructed the jury on behalf of the defendants, that the jury could not award her any damages whatever on account of the fact that she was discharged from her employment. This instruction was proper, since she was not employed for a fixed term, but it does not follow therefrom that the plaintiff was not entitled to show that she was in fact damaged in her reputation by what had transpired. Although she was an experienced saleswoman with a previous good record, and the services of such a person were much in demand at that time, she was unable to obtain employment after repeated efforts at other stores in Jackson, except that she was employed at one store, where the proprietor testified that it was contemplated that she was to be made the manager, and was let out at the end of that day after being questioned as to why she left the employment of the defendants, and on the ground that the proprietor was unwilling to entrust her with responsibility in view of the fact that she had been discharged on account of the misplacement of the money after the circumstances had been explained by the plaintiff in regard thereto. The proprietor of this store so testified at the trial.

The testimony of the defendant Burnie discloses that he realized that at least two innocent persons were being caused to suffer on account of his curious notion that it was necessary to discharge them to protect the interest

of his employer against what he termed on the trial to be a mere act of carelessness.

In determining whether the defendants acted in willful and wanton disregard of the rights of the plaintiff, the entire context of what he said to the three ladies must be considered. It is not permissible to look alone to the statement that "It lies between you three ladies," or that "one of you did it." But, it is proper to consider further that he said "all damn three of you are going out of her this afternoon without a recommendation and with a blot on your record and character. You (that is to say, either of you) can give me as a reference if you like, but when the parties you (that is to say, either of you) want to clerk for or want to hire to call me, I will tell them they are hiring you (that is to say, either of you) at their own risk, that while working here you trifled with Montgomery Ward's money. . . . You laid it and hid it there with ill intentions, and you (that is to say, all of you) are fired without a recommendation."

The defendant Burnie admitted that one party called him over the telephone in regard to a recommendation for Mrs. Skinner, (the plaintiff), and that the inquirer asked him some questions in regard to this case. He declined to give an oral recommendation, and the general manager testified that "we do not give written recommendation." They had the legal right not to give a recommendation. Nevertheless, the jury was entitled to consider their attitude in failing to tell the inquirer that insofar as was known the plaintiff was all right and had a good record, as a circumstance to show whether they had acted willfully and wantonly in discharging her for the reasons set forth in the slanderous utterances complained of.

The defendants in their notice filed under the general issue claimed that the "matters complained of occurred on an occasion of qualified privilege and that all words uttered and spoken to, of and concerning plaintiff" were in the exercise of a qualifiedly privileged communication.

However, they were altogether inconsistent with, and wholly irrelevant to, the privileged investigation then being conducted in regard to an alleged act of negligence or carelessness. Therefore, the jury was warranted in finding that the accusation in its slanderous aspects was not made in good faith, and on probable cause for suspecting anyone of having "trifled" with the company's money with "ill intentions."

In the case of Hines v. Shumaker, 97 Miss. 669, 687, 52 So. 705, 707, the Court quoted approvingly from Cook on Defamation, 35, the well-settled principle that: "The scope of the defamatory matter must not exceed the exigency of the occasion;" and from Newell on Slander and Libel (2d Ed.), Sec. 108, that: "If he (one claiming the privilege) could have done all that his interests or duty demanded without libeling or slandering the plaintiff, the words are not privileged."

And it was said in 33 Am. Jur., Sec. 187, that: "If a publication is designedly or unnecessarily or negligently excessive, the privilege is thereby lost, or at least, whenever a defendant deliberately adopts a method of communication which gives unnecessary publicity to statements defamatory of the plaintiff, the jury will be apt to infer malice."

Nor does the existence of the privilege ever license the speaker to introduce irrelevant defamatory matter, beyond the exigencies of the occasion. Louisiana Oil Corporation v. Renno, 173 Miss. 609, 157 So. 705, 98 A. L. R. 1296. In 33 Am. Jur. 124, Sec. 126, it is said that the essential elements of a qualifiedly privileged communication may be enumerated "as good faith, interest to be upheld, statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the proper parties only."

Herein lies the distinction between the case at bar and that of Scott-Burr Stores Corporation v. Edgar, 181 Miss. 486, 177 So. 766, as was pointed out by this Court in the later case of Sumner Stores of Mississippi, Inc., v. Little,

187 Miss. 310, 192 So. 857, 862, when the Court said that in the Scott-Burr Stores case ''[we were] dealing with a clearly defined case of probable cause.'' Moreover, in the Scott-Burr Stores case, supra, we held that there was no liability under the slander count of the declaration therein, for the reason that the occasion complained of was not only one of qualified privilege, but that the store manager was acting in good faith, on probable cause, and not in a willful and wanton disregard of the plaintiff's rights, the Court saying [181 Miss. 486, 177 So. 769]: ''Nor can there be any doubt from the undisputed testimony as to what occurred that Swanson (the store manager) honestly believed, in good faith, that appellee had taken the (razor) blades without paying for them, and that this belief was engendered by the conduct of the appellee.''

It is true that it was said in the case last above mentioned that ''Under the authorities cited in the briefs, and there seems to be no dissent therefrom, the fact that the alleged slanderous words may have been uttered in the presence and hearing of other persons who were accidentally present and to whom the remarks were not addressed, would not overthrow the qualifiedly privileged nature of the communication. (Citing numerous authorities.)'' However, the fact that slanderous charges are made in the presence and hearing of others not interested in the investigation, is not an immaterial circumstance where the privilege is exceeded and the one claiming the benefit of the privilege is acting in bad faith, without probable cause, and from anger and displayed malice, in willful and wanton disregard of the rights of the person to whom the slanderous charges are addressed, as in the case at bar. The Court so held in the recent case of Sumner Stores of Mississippi, Inc., v. Little, supra, and there cited the cases of Louisiana Oil Corporation et al. v. Renno, supra; and Reliance Mfg. Company v. Graham, 181 Miss. 549, 179 So. 341,—all of which cases recognized the qualified privilege but held

that the same was exceeded, the Court saying that "There is no conflict real or apparent between these cases and the case of Scott-Burr Stores Corporation v. Edgar, supra."

In the case of Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 166 So. 335, 339, the Court said: "Malice in fact relates to the state or condition of the mind of a person who speaks defamatory words. It includes an intention to injure, hatred, or ill will, but is not limited thereto, and appears if words of the character here under consideration were spoken wantonly and in disregard of civil obligation, i. e., if they were spoken recklessly without knowing or caring whether they were true."

It is a fundamental requisite that one claiming the benefit of qualified privilege must believe in good faith that the defamatory matter is true. And, if, as Burnie says, he looked at the incident only as one involving an act of carelessness, then it necessarily follows that he did not believe that either of the three ladies had "trifled" with the money, or had hidden it with "ill intentions." Therefore, the jury was warranted in believing that he made the charges in willful and wanton disregard of their rights, and in excess of any right that he had in investigating an act of mere carelessness.

It was said in the case of Sumner Stores of Mississippi, Inc., v. Little, supra, that "Where one exceeds the privilege, malice may be inferred therefrom," citing in support thereof the following cases: Scott-Burr Stores Corporation v. Edgar, 181 Miss. 486, 177 So. 766; Alabama & Vicksburg Railway Co. v. Brooks, 69 Miss. 168, 13 So. 847, 30 Am. St. Rep. 528; Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 166 So. 335.

The fact that a friendly relation had previously existed between the parties who were interested in the investigation is a circumstance to disprove malice, but such fact is not controlling. It may be engendered by the circumstance or complaint which gave rise to the investigation, and in the instant case the jury could have inferred

it from the fact that Burnie admonished the plaintiff that he would do the talking, and that she must not talk back to him, and also from the willingness of the defendants to manifest a willful and wanton disregard of the rights of at least two innocent persons, and from the anger displayed in the demeanor of the defendant Burnie, as testified to by the witnesses.

The jury was also warranted in concluding from the defendant Burnie's own testimony that he considered that he was entitled to act solely for the interest of his employer in adopting such a method of procedure, and without regard to the rights or interest of at least two of the persons accused. The plaintiff had not by any act of her own involved herself, and he had no right to involve her without probable cause for so doing.

As to whether any of the customers heard and understood the charges as being defamatory, we have already pointed out that some of them came up nearer to hear the accuser, and stopped and listened to what was being said. None of them were introduced as witnesses; but it was held in the case of Jarnigan v. Fleming, 43 Miss. 710, 5 Am. Rep. 514, that where a slanderous charge is made in plain and ordinary language, and not ambiguous as to its slanderous aspect, it is the judgment of the jury, and not that of the hearers of the words, that must determine whether or not they are slanderous and malicious; that the testimony of the hearers in such a case is inadmissible.

Moreover, the rule is stated in 37 C. J. 71, Sec. 463, under the caption of "Understanding of Hearers, Readers or Witnesses," as follows: "In some jurisdictions the rule is broadly stated that witnesses may state their understanding of the alleged defamatory words. But the weight of authority is in favor of the rule that the testimony of readers or hearers as to what they understood the alleged defamatory words to mean is inadmissible, at least where the words are unambiguous and plain and in the absence of peculiar circumstances, either as respects the language employed, or the manner of its utterance or publication;"

citing in support thereof the case of Jarnigan v. Fleming, supra, and a long list of cases from other states. And, there are numerous decisions cited to the same effect in Annotation in 48 L. R. A. (N. S.), beginning at page 367, and wherein it is recognized that the rule is in accordance with the principle of the law of evidence, which in general limits the testimony of witnesses to a statement of the facts and circumstances within their knowledge, to the exclusion of their opinions and mental conclusions concerning the very matter in issue.

In the instant case the three ladies who were involved in the accusations testified as to the facts and circumstances, and it was for the jury to determine what should have been reasonably understood by the persons present who were not interested in the investigation. How third persons may have interpreted the meaning of the language used, where it was plain and unambiguous in stating that "All damn three of you are going out of here this afternoon without a recommendation and with a blot on your record and character," and in stating the other things testified to as hereinbefore mentioned, would not under the foregoing authorities be binding either on the defendants, the plaintiffs or the jury. It is said in Townsend on Libel and Slander, p. 177, Sec. 140, that where the language is unambiguous, it "is to be construed in its ordinary sense, and without reference to how those to whom it was published understood it or what was intended by the publisher." And, this principle is recognized by all modern textwriters on Libel and Slander. For instance, it is said in Gatley on Libel and Slander (3rd Ed.), 617, that: "Where the words are ordinary English words and are plain and unambiguous in their meaning, the jury are the judges without further evidence whether the words would reasonably be understood in a defamatory meaning, and it would be usurping their province to call a witness and ask him what he understood them to mean."

Moreover, in several of the recent decisions of this Court involving actions of slander, it has not been deemed

requisite to introduce the customers in a store, or by-standers in the place of business, to testify as to their understanding of the meaning of the words complained of. It has only been necessary to prove that such persons, or some of them, heard the charges, or that the facts and circumstances would entitle the jury to believe that they heard and understood the same.

But, it is strenuously urged here for the first time, in response to a memorandum sent out by the Court since the case was submitted for decision, that the requested peremptory instruction in favor of the defendants should have been granted on account of the fact that the charge on its face and from the evidence appears to have been made in the alternative, and that therefore the instruction should have been given without regard to any other considerations. This question was not presented for decision to the trial court either by demurrer, motion for a directed verdict, or otherwise. In fact, the notice given by the defendants under their plea of the general issue recites that: "The matters complained of occurred on an occasion of qualified privilege and all words uttered and spoken to, of and concerning the plaintiff by the defendant R. H. Burnie . . . constitued a qualifiedly privileged communication . . ." And some of the instructions for the defendants proceed on the theory that the defendant was "speaking of, to and concerning the plaintiff at the time and on the occasion in question."

But, be that as it may, in the Kentucky case of Forbes v. Johnson, 11 B. Mon. 48, 50 Ky. 48, which involved a defamatory utterance and which in substance imported that either one or the other of two persons had altered a promissory note, the Court said: "And if this were not so, still the charge if not confined to the plaintiff, evidently imports that the fraudulent alteration was committed by either John or James Forbes, and as it does not discriminate between them but is equally a charge against each, we are of the opinion that it is in effect a charge against both, and that either and each may sue for the

libel, applying the charge to himself. If each has not the right to maintain the action for words importing that one or the other of them (without further discrimination), had been guilty of a crime, it can not be maintained by either. And the willful libeller might shield himself from responsibility by making his charges in the alternative against two, though in fact the michief to each would be substantially the same as if he had charged both jointly or each separately. A charge that one or the other of the two persons committed a crime, is in truth, an imputation against both, and gives to each a right of action.''

And, in the case of Hardy v. Williamson, 86 Ga. 551, 12 S. E. 874, 876, 22 Am. St. Rep. 479 (Cited in 17 R. C. L. 376), wherein a newspaper publication charged a collusion between a brick company and its subcontractors and the subordinate engineers of a construction company, or some of them, to cheat, swindle and defraud the construction company, it was held that one of the subordinate engineers may maintain an action thereon, on proof that the publication referred especially to, and was especially defamatory of, him, the Court saying: ''Nor does it make any difference that the words were put in the disjunctive, to-wit, 'the subengineers, or some of them.' It may turn out on the trial that the expression 'or some of them' was used because the writer did not mean that all were guilty, but that the plaintiff alone, or with others, was guilty. The plaintiff would be equally aggrieved if charged alone, or as one of a number of engineers, and equally entitled to maintain his action.''

Also, it is stated in the A. L. I. Restatement of Torts, Vol. 3, Sec. 564, among other things, that: ''The size of the class may be so small as to indicate that the plaintiff is the person intended *or at least to cast such grave suspicion upon him as to be defamatory of him.*'' (Italics ours.) This section of that text, together with the comments thereon, further tends to support the theory of liability where the charge is made in the alternative to a smaller group, as distinguished from a general class, and

especially if the plaintiff is able to satisfy the jury from all of the facts and circumstances testified to that injury was intended to be done the plaintiff by the implications from the language used, and especially when the plaintiff is spoken to both separately and collectively with others, depending upon what the hearers might reasonably understand therefrom. To the same effect is subsection b, Art. 3, p. 11 in Bower, the Law of Actionable Defamation, (2d Ed.) 1923, and the subject is also treated in Footnote (m) thereunder; and Gatley, Libel and Slander (3d Ed.) 1938, p. 126, supports the rule stated in A. L. I., 3d Rest. Torts, Sec. 564, wherein the Restatement gives the following illustration: "A newspaper publishes the statement that some member of B's household has committed murder. In the absence of any circumstances indicating that some particular member of B's household was referred to, the newspaper has defamed each member of B's household."

Moreover, as a practical proposition, if, for instance, an executive officer of a bank should make the charge that either one or the other of two employees of the banks, naming or addressing them, had "trifled" with the bank's funds, and had hidden them with "ill intentions," and should thereupon discharge both of such employees, it would be difficult to conceive how the good name and reputation of each would not be injured thereby, or how the bank official could be said to have not acted willfully and wantonly in making the slanderous charge where the circumstances failed to disclose that either of the employees had been guilty of more than an act of mere carelessness. In such case both of the employees would be defamed and damaged in their reputation, standing and prospects for business success, whether the decision of any court has heretofore said so or not.

However, a careful examination of the cases relied upon to the contrary will disclose that many of them are in actions of libel where the printed and published article does not mention the name of the plaintiff and a demurrer

has been sustained because no facts are stated in the declaration showing that he is the person intended to be defamed within the understanding of the readers; others involve instances where the slander is uttered out of the presence of the victims and where the charge is as to some unidentified member of a large class, or against such a class as a whole, or some member of a small group in the alternative, and is not so framed as to enable the hearers to reasonably understand who is intended, or to understand that defamatory imputations were intended against all of the members of the small group; other cases merely hold in accordance with the rule announced by the textwriters that it is incumbent upon a plaintiff seeking compensation for a libel or slander to show that the statement complained of was made with reference to him, but as stated in 33 Am. Jur. 243, Sec. 263, "He may discharge this burden by proof of relevant circumstances;" and the cases of Sumner v. Buel (N. Y.), 12 Johns. 475; Harvey v. Coffin (Ind.), 5 Blackf. 566; and that of Bull v. Collins, (Tex. Civ. App.), 54 S. W. (2d) 870, seem to hold contrary to the cases hereinbefore cited. The decision in the case of Bull v. Collins, however, turned on the failure of the proof to show a publication to a third party, but at any rate the court observed that nevertheless no recovery could have been had since the charge was in the alternative. And, no case in point has been called to our attention in the briefs, nor has the writer of this opinion been able to find any, holding that no recovery could be had where the hearers were looking at the accuser and the victim at the time of the accusation, and could see and hear him when he was talking to those accused, both separately and collectively, and where the accusations were so framed as in the instant case as to impute that all of those accused would leave an employment with a blot upon their record and character, and under an accusation that anyone desiring to employ either of them would do so at their own risk.

Nor is it material that in the instant case the accuser may not have carried out his threat to so inform any prospective employer of either of the three ladies. The question is how the hearers who were present at the time the accusations were made could have reasonably understood them as reflecting in a defamatory manner upon them all.

Any other rule would violate elementary principle of jurisprudence, in suffering a wrong to exist without a remedy, and would permit indiscriminating reference to an act of one as the deed of all, instead of letting the odium rest alone upon the guilty person.

In Gatley on Libel and Slander 613, it is said that: "In an action for slander, if the defendant claims that the words were spoken of the person other than the plaintiff, the whole conversation, and all of the words spoken by the defendant, so long as they are part of the same transaction and lead up to the words complained of, may be given in evidence for the purpose of showing that the words would be understood by reasonable people to refer to the plaintiff."

From the views hereinbefore expressed in this opinion, it follows that we think the case was one where the jury was warranted in imposing both actual and and punitive damages.

The verdict returned by the jury was for the sum of $15,000. The proof disclosed that the defendant corporation had current assets worth more than 261 million dollars, and that its earned surplus is nearly 110 million dollars, a factor which the jury could properly take into consideration in assessing punitive damages. The trial judge, however, required a remittitur to be entered reducing the amount to the sum of $11,250, and a majority of the Judges here, not including the writer and the Chief Justice, are of the opinion that a further remittitur should be required so as to reduce the sum to $7,500.

We have carefully examined all of the instructions complained of, and we are of the opinion that the plain-

tiff's instructions when considered together fully recognize that the occason was one of qualified privilege and that they are otherwise free of reversible error, and especially when all of the instructions in the case are considered as a whole. We have also considered each of the other alleged errors assigned, and are of the opinion that no reversible error at all was committed in the trial court.

If, therefore, the further remittitur is entered as required, the cause will be affirmed; otherwise, the same will be reversed and remanded for the assessment of damages only.

Affirmed, with remittitur.

DISSENTING OPINION.

**L. A. Smith, Sr., J.,** delivered a dissenting opinion.

I am of the opinion that the peremptory instruction ought to have been granted to the appellant. That the conduct of appellant's manager was unreasonable, and that some substantial damage to the appellee resulted because of her loss of employment may be conceded. The action here, however, is for slander.

Three essential elements of an action for slander are not shown by the record to have been present: (1) the words uttered must have been spoken of and concerning the plaintiff; (2) since the occasion was one of qualified privilege, actual malice, in fact, must exist; (3) there must be a publication to third parties who heard and understood the language, if not the actual import.

The first proposition is not met. The words spoken do not refer to the plaintiff, but to some indefinite individual in the group. The very uncertainty was the reason for the summary and wholesale discharge of all three employees. Such action was taken, not because the appellant thought the appellee was guilty, because he did not know, and could not say. Therefore, he did not so say. As

stated in Bull v. Collins (Tex. Civ. App.), 54 S. W. (2d) 870, 871, the offending allegation was that, ''One of you two took the money.'' The Court said, there is a ''clear implication . . . that both did not steal it.'' It was further held that even if he had referred to the plaintiff no publication was shown, since both parties were principals and there is no slander when the remarks are addressed only to those accused. This principle finds support, also, in Harbison v. Chicago, etc., R. Co., 327 Mo. 440, 37 S. W. (2d) 609, 79 A. L. R. 1, in which a husband and wife were both charged with crime. In a suit by the husband it was held that there was no publication to the wife, because she was a principal. This rule is recognized, also, by our own Court in Wrought Iron R. Co. v. Boltz, 123 Miss. 550, 86 So. 354, in which statement was made to the wife regarding her husband. Under the circumstances the interest of the wife, as well as that of a third party who also was present, was held to be sufficiently identified with that of the husband to constitute all as principals.

The controlling opinion leans heavily upon the doubtful authority of Jarnigan v. Fleming, 43 Miss. 710, 5 Am. Rep. 514, and Forbes v. Johnson, 50 Ky. 48. The authority of these cases, the former decided in 1870, and the latter in 1850, nearly a century ago, has been much impaired by the enlightened trend of modern decisions. I shall do no more than cite some typical examples of the contrary view: Norris v. Brady, 234 Mo. App. 437, 132 S. W. (2d) 1059; Kenworthy v. Journal Co., 117 Mo. App. 327, 93 S. W. 882; Zanker v. Lackey, 2 W. W. Harr. 588, 32 Del. 588, 128 A. 373; American Civil Liberties Union, Inc., v. Kiely, 2 Cir., 40 F. (2d) 451; Owens v. Clark, 154 Okl. 108, 6 P. (2d) 755; Caruth v. Richeson, 96 Mo. 186, 9 S. W. 633; Dunlap v. Sundberg, 55 Wash. 609, 104 P. 830, 133 Am. St. Rep. 1050; Harris v. Santa Fe Townsite Co., 58 Tex. Civ. App. 506, 125 S. W. 77; Sumner v. Buel (N. Y.), 12 Johns. 475; Jones v. Modisette, 151 La. 639, 92 So. 144; State v. Mayberry, 33 Kan. 441, 6 P. 553; Harvey v.

Coffin (Ind.), 5 Blackf. 566; Wigmore, Evidence (2d Ed.), Sec. 1971; Salmond, Torts (7th Ed.), Sec. 137, p. 527.

It is agreed that the occasion was one of qualified privilege. The record does not show that there was personal malice in fact, nor that the intemperate and tactless conduct of appellant's agent was other than a resentment of the act, rather than against the actor. The ground for suspicion was present as in Scott-Burr Stores Corp. v. v. Edgar, 181 Miss. 486, 177 So. 766, 770. Bad faith could not be predicated upon an indignant resentment against an action operating to the detriment of the employer.

The third requirement of a publication is not sufficiently shown. As stated in a former paragraph, where those to whom the remarks are addressed are all principals, there is no publication as to third parties. An effort was here made to show that some customers were incidentally present, and that some may have heard the remarks. There is no ample proof that any third party heard the language used, or caught its import. Even so, such accidental circumstance would operate merely to invoke the holding in Scott-Burr Stores Corp. v. Edgar, supra, where it is stated: "Under the authorities cited in the briefs, and there seems to be no dissent therefrom, the fact that the alleged slanderous words may have been uttered in the presence and hearing of other persons who were accidentally present and to whom the remarks were not addressed, would not overthrow the qualifiedly privileged nature of the communication," (citing numerous cases and texts). It is in point, also, that the definition of express malice approved in the case just quoted, "denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, and exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with a design to willfully or wantonly injure another."

The verdict unquestionably charges against the appellant the damages incident to the loss of employment and the difficulty of procuring other work. The evidence on this point is extended, and reveals a just personal resentment by the plaintiff, and injuries to her feelings. Yet if there be no actionable cause for the slander these matters would be immaterial.

For the above reasons I am of the opinion that the peremptory instruction requested by the appellant ought to have been granted.

**Alexander** and **Griffith, JJ.**, concur in the foregoing dissent.

**Griffith, J.**, delivered a dissenting opinion.

Although it may sometimes seem otherwise, and especially so here lately, it has not often been the case, looking back over the last thirty years, that decisions are made in this Court on a division of three to three, and fortunately when it has been done, such case or cases have generally been submerged in things forgotten and are seldom again referred to or cited. But it may be safely asserted that this is the first case affirmed in this Court on an equally divided vote when the affirming opinion has followed the minority view among the authorities, as has been done here, on the most important issue in the case, namely here, as to the right of one of a group to sue in slander when the alleged slander, taking the context thereof in its entirety—as all the authorities agree must be done, instead of picking out excerpts therefrom here and there as been done in this case—is addressed to a group and it avers that one or the other, not all but one or the other, of that group is the guilty party and there is no charge in the language used that any particular one of them is meant. This is the rule as laid down in four out of five standard textbooks on the subject in general and approved use in this state and throughout

the country and is the rule pronounced by what ought to be taken as an array of cases, cited in the principal dissenting opinion, so numerous as to be overwhelming.

Textbooks, encyclopaedias and restatements are valuable, however, only as they truly reflect the decisions on the particular point, and cases not precisely in point aid only as to general principles. Here we have a precise point and the only case which holds with the affirming opinion is the old case, Forbes v. Johnson, 11 B. Mon. 48, 50 Ky. 48, whereas every other case throughout the country on the precise point has held to the contrary. And the modern cases from Kentucky are among the strongest we have in support of the proposition that words to be slanderous must refer to a particular person, or if more than one, must be inclusive of all of them. See Louisville Times Co. v. Emrich, 252 Ky. 210, 66 S. W. (2d) 73, 75, a stronger case on its facts for the plaintiffs than is the case now before us, in which the court said that "if the words used really contain no reflection on any particular individual, no averment can make them defamatory," and Louisville Times v. Stivers, 252 Ky. 843, 68 S. W. (2d) 411, 97 A. L. R. 277. Books aside, our English language ought not be made subject to any such distortion that an assertion that one of you did it, or one or the other of you did it will mean the same as all of you did it, or every one of you did it.

Still more unfortunate, however, is that the decision, if subsequently followed or regarded as authority, will eventuate in a distinct disservice both to employers and employes in this state. Most employes in this section of the country are employed without any fixed term of service; wherefore, they are at liberty to withdraw at any time without notice. In consequence, the employer has the privilege to terminate the service at any time without notice, and without any reasons to be given. Such was the employment in the present case. If an employer finds that some irregularity has happened which cannot be permitted and he has reason to suspect that the wrong

has been committed by one of the members of a group, but has no way to find out which individual of them was the wrongdoer, the employer may thereupon discharge the entire group from the service and may decline to give any reason therefor either to the employe or any one else.

There are not many employers, as may be said to their credit, who, although having the legal right, would deem it naturally right to throw an entire group of several out of work when it is to be seen that the probabilities are that only one of the group was the guilty party; so that, as was done here, the just and normal thing to be done would be to call the group together, inform them that the employer desires to know which one of them committed the offense, with the request or demand that the offender speak up with an admission, and, if he has it, an explanation, to the end that all the other members of the group may be freed of suspicion, and may go on in the employment with a clean record, and none would have thought until the decision announced in this case that the employer did not have the right to do this or that in doing it he would slander every member of the group. That is a circumstance in business employments which has happened over and over everywhere and thousands of times, yet nobody has ever until now supposed throughout the years of modern judicature that it was a matter to be brought to court.

It will, therefore, be much cheaper to employers in this State henceforward, cheaper in money even if cheaper in conduct to discharge the entire group without any personal interview with them, giving no reason, rather than to run the risk of having a three to three court mulct them in large damages for taking the course which the employer ought to prefer to take and which the employe ought also to prefer, to the end not to discharge all of a group when only one therein deserved it. Then, how could it be otherwise than that an obvious disservice has been done both to employer and employe by what has been decided, or rather adjudicated, in this case—except,

of course, as to the particular plaintiff who emerges with a large sum of the employer's money?

Nor, in my judgment, is the case maintained on the issue of malice, which in the controlling opinion is sought to be worked out on the basis of intemperance in the language used, inferring malice therefrom when the direct proof is that there was no actual malice.

The following principles are found in Scott-Burr Stores Corp. v. Edgar, 181 Miss. 486, 177 So. 766, 767:

1. The burden of proof in malice is upon the plaintiff;
2. The malice must be actual and not technical;
3. Such malice is required both to destroy the privilege and to award punitive damages.

The language used in the Edgar case was, "You stole some razor blades from this store and put them in your pocket." This was slander per se, and carried implied malice. Yet in the first Edgar case, 165 So. 623, it was held that punitive damages were not allowable. Such, also, was the holding in the second case, 181 Miss. 486, 177 So. 766. In the latter case there was proof that the manager was angry and intemperate in his language. The text from Newell on Slander and Libel was quoted and approved as follows: "If the defendant honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in describing it is no evidence of malice. The fact that the expressions are angry and intemperate is not enough; the proof must go further and show that they are malicious."

Further defining actual malice, we stated, "Actual or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, and exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with a design to willfully or wantonly injure another," citing Newell on Slander.

In the instant case the words were not spoken by Prenger, who stood in the relationship of Swanson in the Edgar case, and since under the Edgar case the words if spoken by Prenger would not have been intemperate, the rule applies more sharply to the words spoken by Burnie, who was not acting under any purpose or motive of his own, since he was acting strictly under Prenger's orders. There was no occasion for personal animosity or spite. The approaching Christmas season made it important to keep his sales force intact. Spite and malice are unreasoning and without purpose, yet here there was both reason and purpose, both of which concerned the interest of Montgomery Ward, and not of Burnie. Such purpose was to discover the negligent actor in the interest of Montgomery Ward. Burnie's conduct was not only consistent with a purpose to serve his employer, but inconsistent with personal spite. The very fact that he used pressure, tactless though it may have been in its exercise, is nevertheless consistent with a desire to serve his company, and emphasize the reason and purpose of his acts, for it was by so doing that he thought to move the guilty party, in fairness to the others, to speak up and admit it. There is no contradiction of his statement that had the identity of the offending party been disclosed he would not have discharged any of them. This shows that he had no desire to cause harm or personal inconvenience to any of the three. In this connection, the doctrine in the Edgar case is in point, to wit: "If the evidence adduced is equally consistent with either the existence or nonexistence of malice, there can be no recovery, for there is nothing to rebut the presumption which has arisen in favor of the defendant from the privileged communication."

Also, "It is not sufficient in a case such as this that the evidence be consistent with the existence of actual malice, or even that it raise a suspicion that the defendant might have been actuated by malice or a doubt as to his good faith. It must affirmatively prove the existence of actual

malice, and to do so it must be more consistent with the existence of actual malice than with its nonexistence.''

Burnie did not know which of the three was guilty, and he did not say that any particular one of them was guilty; therefore he could have had no actual malice against any one of them on account of it. This is a much weaker case upon the facts than the Edgar cases. In the Edgar cases the language actually charged a crime, was not denied, and was directed to an identified party. The act and language of Burnie in the present case was wholly impersonal. Either the decision in the Edgar cases was wrong, or the result in the instant case must be so, and we ought to adhere to our own deliberately decided cases, else the law in each case will be only what the judge may prefer it to be in the particular case.

**L. A. Smith, Sr.**, and **Alexander, JJ.**, concur in the foregoing dissent.