Luis De Hoyos, Appellant, *v.* Susie H. Thornton, Respondent.
Philip Kaplan, Appellant, *v.* Susie H. Thornton, Respondent.
Russell W. Allan, Appellant, *v.* Susie H. Thornton, Respondent.
Nathan Rubin, Appellant, *v.* Susie H. Thornton, Respondent.

Third Department, March 6, 1940.

**2**

*Isaac Silberman* [*Ellsworth Baker* with him on the brief], for the appellants.

*John D. Lyons*, for the respondent.

BLISS, J. These are four separate actions for libel based upon an article written by respondent and which she caused to be published in a newspaper in the village of Monticello, N. Y. The appellant De Hoyos was the mayor and the other appellants were trustees of the village. The respondent was a resident and substantial property owner in the village. The alleged defamatory article was as follows:

" Being a heavy taxpayer in the village of Monticello, I feel privileged to give Mr. Bowers of Monticello, N. Y. my opinion in regard to acquiring the former Elk's Club property for a community hall which is just another scheme to bleed the taxpayers and force more families to lose their homes. Monticello property owners have suffered plenty at the expense of these wildcat ideas and if the children need a parking place I would like to draw Mr. Bowers' attention to the school playground which has already cost us thousands of dollars and still unfinished, or perhaps the location of the Frank Leslie Hotel and grounds might serve the purpose better. In either case it will be cheaper than maintaining a large Broadway property just for toilets. If Mr. Bowers will look into our village affairs he will find the unbearable burden we are now carrying due to extravagant operation and ruthless spending of our officials that we send larger checks for every piece of equipment than any town around here and have so many on our payroll they are in each other's way. It seems to me it might be better to relieve the tension on the taxpayers right now and get ready for the golden age which can come only when men of brains plus horse sense run our village right and not be dictated to by gangsters or Chambers of Commerce."

The plaintiffs allege that the article referred to them, that it was defamatory and actuated by malice, was widely circulated and read and that the appellants had been damaged thereby. No special damage was alleged. The complaints were dismissed for lack of sufficient facts.

The Special Term held that the appellants might be considered the objects of the alleged libel only by their connection with the

government of the village; that this connection was not stated in the article itself nor were the appellants mentioned by name therein and that the connection is supplied in the complaints by innuendo. He concluded that the article was not libelous in and of itself and that as special damage is an essential element of a cause of action in such case the complaints were insufficient.

Rule 96 of the Rules of Civil Practice provides that in an action for libel it is not necessary to plead any extrinsic fact to show the application of the defamatory matter to the plaintiff and that the plaintiff may state in general terms that such matter was published of him. The instant complaints do that.

Monticello readers would clearly and quite reasonably understand who was referred to in the article as being dictated to by gangsters. The author speaks of the village of Monticello, " our village affairs," " our officials " and the desideratum of the " golden age which can come only when men of brains plus horse sense run our village right and not be dictated to by gangsters or Chambers of Commerce." There is no room for doubt as to who were the objects of her attack. Their identity is as clear to local readers from the article itself as if they were mentioned by name. Nor is there any question as to the article being defamatory on its face. It states in substance that these village officials were extravagant and engaged in ruthless spending. Had it stopped there it might well be said that it was merely fair comment on the acts of public officials. But it goes much further. It charges these officials with being dictated to by gangsters or Chambers of Commerce. To say that a village official was dictated to by a Chamber of Commerce might not be defamatory but to say that he is dictated to by gangsters conveys an entirely different impression. There is no need to discuss the present-day meaning of the term " gangster " which has come into our vocabulary in more recent times. Webster's New International Dictionary (2d ed.) defines " gangster " as " a member of a gang of roughs, hireling criminals, thieves, or the like." In *Commonwealth* v. *Lehman* (309 Penn. St. 486; 164 A. 526) it was held not to be a misuse of the term " gangster " to apply it to a group of habitual gamblers associated together for the purpose of murder. At least one thought here conveyed is that the lawless and criminal element were directing the actions of appellants and controlling them in their performance of their official duties. This surely defames these officials and holds them up to public obloquy and contempt. If true, it disgraces them. We hold, therefore, that this article is libelous on its face and compensatory damages follow as a matter of course. " Reputations may not be traduced with impunity." (*Corrigan* v. *Bobbs-*

*Merrill Co.*, 228 N. Y. 58; *O'Connell* v. *Press Publishing Co.*, 214 id. 352; *Abell* v. *Cornwall Industrial Corp.*, 241 id. 327; *More* v. *Bennett*, 48 id. 472.) Whether these damages warrant a recovery anything more than nominal is a question to be decided upon the trial. (*Abell* v. *Cornwall Industrial Corp., supra.*)

Further support for this view may be found in 3 Restatement, Torts (§§ 564 and 569).

The judgments and orders should be reversed, with one bill of costs in each action to the appellant to abide the event, and the motions to dismiss the complaints denied, with ten dollars costs in one action.

CRAPSER and SCHENCK, JJ., concur; HILL, P. J., and HEFFERNAN, J., dissent.

Judgments and orders reversed, with one bill of costs in each action to appellant to abide the event, and motions to dismiss the complaints denied, with ten dollars costs in one action.