George GOLSON, doing business under the assumed name and style of General Arts Sewing Center, Plaintiff,

v.

The HEARST CORPORATION, Defendant.

United States District Court,
S. D. New York.

Dec. 31, 1954.

Lazar Emanuel, New York City, for plaintiff.

McCauley & Henry, New York City (Alfred H. Wasserstrom, New York City, of counsel), for defendant.

WALSH, District Judge.

This is an action for libel. Defendant has moved to dismiss the complaint as failing to state a claim upon which relief can be granted. The motion is granted because, accepting the facts alleged in the complaint, defendant did not exceed the limits of fair comment.

Defendant, in its magazine "Good Housekeeping", published an article advising against the purchase of Japanese made sewing machines being sold under American trade names identical with or similar to those of other types of widely advertised mechanical appliances, such as vacuum-cleaners, radios, typewriters and automobiles. Plaintiff was not mentioned but he claims that the article libels any dealer or distributor of these sewing machines because it imputes to them an intent to deceive purchasers.

The language principally relied upon is the opening paragraph of the article which reads as follows:

"Look at the names in the picture opposite. [Cadillac, Majestic, Royal, Hoover, Plymouth, Zenith, Universal, Admiral, Hudson, Eureka, Mercury, Simplex] They are all names of sewing machines. Perhaps this surprises you. Perhaps, for example, you didn't know that the Hoover vacuum-cleaner company makes a sewing machine. *It doesn't.* Neither do the Cadillac automobile people nor the Admiral radio people nor the Royal typewriter people. These well-known brand names are used on sewing machines with deliberate intent to fool you. All these machines are *made in Japan* and have no relationship whatsoever to the American trade names."

The article was distributed throughout the United States among several million readers. Plaintiff operates a retail sewing machine business in Columbia, South Carolina, and is one of many who has sold and continues to sell both "Royal" and "Universal" sewing machines. He has the exclusive right to use the trade name "Royal" in South Carolina.

The article comes within the limits of fair comment. It is directed to a matter of public interest.[1] The assertion of intent to fool is an expression of opinion rather than a statement of fact.[2] The general allegation of malice does not save the complaint;[3] there is no claim of personal spite or ill will between defendant and plaintiff nor is the comment in such reckless disregard of the truth that malice may be inferred;[4] the opinion expressed, though imputing motives perhaps beyond those usually shrugged off as *caveat emptor,* is one

1. Cf. Sherman v. International Publications, 1925, 214 App.Div. 437, 212 N.Y.S. 478; Mack, Miller Candle Co. v. Macmillan Co., 1934, 239 App.Div. 738, 269 N.Y.S. 33, affirmed 266 N.Y. 489, 195 N.E. 167.
2. Hoeppner v. Dunkirk Printing Co., 1930, 254 N.Y. 95, 172 N.E. 139, 72 A.L.R. 913; Briarcliff Lodge Hotel v. Citizen-Sentinel Pub., 1932, 260 N.Y. 106, 183 N.E. 193; Foley v. Press Pub. Co., 1929, 226 App.Div. 535, 235 N.Y.S. 340.
3. The question of malice has been held controlling only where there has been question as to accuracy of facts, reasonableness of the comment or whether a statement is one of fact or comment. Cf. Hall v. Binghamton Press Co., 1942, 263 App.Div. 403, 33 N.Y.S.2d 840, affirmed 1946, 296 N.Y. 714, 70 N.E.2d 537, with Hoeppner v. Dunkirk Printing Co., supra; Matarazzo v. Daily Gazette Co., 1949, 276 App.Div. 249, 93 N.Y.S.2d 587, affirmed, 1951, 302 N.Y. 552, 96 N.E.2d 442; Foltz v. News Syndicate Co., D.C. S.D.N.Y.1953, 114 F.Supp. 599.
4. Cf. Pecue v. West, 1922, 233 N.Y. 316, 322–323, 135 N.E. 515.

which may fairly be drawn from the undisputed facts related in the article.[5]

■ The sufficiency of the complaint is subject to a double test: If the language is given a defamatory meaning, will a substantial number of readers believe that it refers to plaintiff? If a substantial number of readers understand it to refer to plaintiff, can they read it as a statement of fact seriously injurious to his reputation?

■ The size and nature of the group subject to the language is significant not only as to whether the aspersion refers to each member of the group and in particular to the plaintiff,[6] but also as to the effect and the meaning of the language itself.[7] The number of persons to whom the article is applicable and the nature of the article must be considered together. Language which would be read seriously if written as to an individual might not be capable of serious application to each member of a large group; that which is general may become vague; that which is specific may become ridiculously extravagant. Cf. Knuppfer v. London Express Newspapers Limited, 1944 A.C. 116, 124; Neiman-Marcus v. Lait, D.C.S.D.N.Y. 1952, 13 F.R.D. 311, 316. Similarly, the number of persons subject to a statement may emphasize and resolve factors which establish it as fair comment. The number involved, in itself, tends to show the matter to be one of public interest. Assertions as to a large number are more likely to be read as opinion rather than as statements of fact. Malice in the sense of personal spite or ill will becomes less likely because of the absence of underlying personal relationships. Malice in the sense of a reckless disregard for the truth must be measured against a broader range of tolerance.

Counsel for both parties have attempted to force the case into the pattern of Neiman-Marcus v. Lait, D.C.S.D.N.Y. 1952, 13 F.R.D. 311. They have both artificially assumed the language to be a defamatory statement of fact, and limited their dispute to whether it could be read as referring to plaintiff. The case does not fit the pattern because here we have an expression of opinion rather than a reckless statement of fact. Here the language is capable of serious application to each member of the group but the very quality which leads to its serious acceptance as to such a broad group of individuals is its appeal as an expression of reasoned opinion rather than a reckless statement of fact. The Neiman-Marcus case held that with respect to the libel of a group, the applicability of the language to each member of the group is not conclusively determined by its literal applicability or inapplicability but by deciding whether a substantial number of readers could conclude that it reflected upon the individual plaintiff.[8] Conversely, whether it is stated that 100% or 99% of a group are thieves, the effect upon an individual member's reputation may be the same.[9] The present holding is not a withdrawal from this rule but the complement of it. There is less need for arbitrary restriction upon the size of the group which may recover if, upon motion to dismiss, the literal language may be given a reasonable interpretation in the light of its reference to each member of the group.

5. Hall v. Binghamton Press Co., supra; Tanzer v. Crowley Pub. Corp., 1934, 240 App.Div. 203, 268 N.Y.S. 620, 622; Hills v. Press Co., 122 Misc. 212, 202 N.Y.S. 678, 680–682, affirmed 1925, 214 App.Div. 752, 209 N.Y.S. 848.

6. Gross v. Cantor, 1936, 270 N.Y. 93, 200 N.E. 592; Service Parking Corp. v. Washington Times Co., 1937, 67 App.D.C. 351, 92 F.2d 502; Tanenbaum, Group Libel, 35 Corn.L.Q. 2616 (1950) and cases there cited.

7. Cf. opinion of Lord Porter in Knuppfer v. London Express, 1944 A.C. 116, 123.

8. See Marr v. Putnam, 1952, 196 Or. 1, 246 P.2d 509, 521; DeHoyos v. Thornton, 1940, 259 App.Div. 1, 18 N.Y.S.2d 121, appeal dismissed, 1940, 284 N.Y. 632, 29 N.E.2d 939; Cf. Grant v. Reader's Digest Ass'n, 2 Cir., 1946, 151 F.2d 733, 735; Mencher v. Chesley, 1947, 297 N.Y. 94, 100, 75 N.E.2d 257.

9. Mongomery Ward & Co. v. Skinner, 1946, 200 Miss. 44, 25 So.2d 572; contra, Kenworthy v. Journal Co., 1906, 117 Mo.App. 327, 93 S.W. 882.

By no possible interpretation of the language of the article could a reader conclude that the author professed actual knowledge of plaintiff's personal intent or that she was asserting on the basis of any actual dealings that plaintiff intentionally deceived his customers. No interpretation is possible except that the statement as to intent was her own opinion reached upon the basis of the facts related in the article, none of which are disputed.

█ The question remains whether the general allegation that the publication is malicious requires denial of the motion. Where as here, such a conclusory allegation is inconsistent with the allegations as to the relationship of the parties and the contents of the publication, it does not.[10] There is no allegation of ill will or spite, or any previous relationship between the defendant and plaintiff, or any other person concerned with the article. The reasonableness of the comment negates the possibility of establishing malice on the basis of a reckless disregard of the truth.

Motion granted. Complaint dismissed. Costs to the defendant.