Wylanda **GALES, Patricia Gamble, Daniel Glass, Dorothy McGee, Jerry Scott, Jr., and Charles Wesley Plaintiffs**

v.

**CBS BROADCASTING, INC.; Media General Operations, Inc., d/b/a WJTV; Wyatt Emmerich; Beau Strittman; Don Hewitt; Morley Safer; Deidre Naphin; Jennifer Breheny; and John Does 1–50 Defendants**

No. CIV.A.5:03–CV–35(BRS).

United States District Court, S.D. Mississippi, Western Division.

June 27, 2003.

---

Harry Merritt McCumber, Christopher W. Cofer, Cofer & Associates, P.A., Jackson, MS, for Plaintiffs.

Robert O. Allen, Allen, Allen, Boerner & Breeland, Brookhaven, MS, Luther T. Munford, John P. Sneed, Christopher R. Shaw, Phelps Dunbar, W. Wayne Drinkwater, Jr., Billy Berryhill, Bradley, Arant, Rose & White, LLP, Jackson, MS, for Defendants.

*MEMORANDUM OPINION
AND ORDER*

BRAMLETTE, District Judge.

This cause is before the Court on the plaintiffs' motion to remand (**docket entry 5**), and on the plaintiffs' motion to submit

additional evidence, (**docket entry 10–2**). Having carefully considered the motions, responses, memoranda, and all supporting documents, as well as the applicable law, the Court finds as follows: .

The complaint in this action was filed in the Circuit Court of Jefferson County, Mississippi, on December 26, 2002, alleging causes of action exclusively under state law. The complaint alleges that defendant CBS Broadcasting, Inc. ("CBS"), is a foreign corporation,[1] and that defendant Media General Operations, Inc., d/b/a WJTV ("Media General") is a foreign corporation.[2] The complaint further alleges that defendants Morley Safer, Don Hewitt, Deidre Naphin and Jennifer Breheny are not adult resident citizens of Mississippi.[3] Defendants Wyatt Emmerich and Beau Strittman are adult resident citizens of Mississippi, as are all six of the plaintiffs. (Complaint, ¶¶ 1, 4–5).

On January 22, 2003, the defendants removed the case to this Court, on the basis of diversity jurisdiction under 28 U.S.C. § 1332. The federal removal statute permits defendants in a state court action to remove the lawsuit to federal district court if federal subject matter jurisdiction existed when the complaint was initially filed. 28 U.S.C. § 1441(a); *see Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1546 (5th Cir.1991). In other words, removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *Id.* The defendants contend that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. To support their claim of diversity jurisdiction, the defendants must show that there is complete diversity of citizenship between the plaintiffs and defendants, and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C. 1332(a). It is undisputed that the amount in controversy requirement is met. It is also undisputed that there is complete diversity between the plaintiffs and defendants CBS, Media General, Safer, Hewitt, Naphin and Breheny, but not between the plaintiffs and defendants Emmerich and Strittman. Although the plaintiffs and defendants Emmerich and Strittman are all residents of Mississippi, the defendants claim that the Court can properly exercise diversity jurisdiction over this matter because the plaintiffs fraudulently joined Emmerich and Strittman to defeat the complete diversity requirement of 28 U.S.C. § 1332(a). The defendants maintain that the plaintiffs have no cognizable claims against Emmerich and Strittman, and therefore, that there is complete diversity of citizenship between the plaintiffs and the remaining defendants. On February 21, 2003, the plaintiffs filed their motion to remand, asserting that they did not fraudulently join Emmerich and Strittman, and accordingly, that diversity jurisdiction does not exist.

"[T]he burden of proving that a plaintiff fraudulently joined non-diverse defendants is heavy," and requires the removing defendants to prove fraudulent joinder by clear and convincing evidence. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983); *see also Jernigan v. Ashland Oil*, 989 F.2d 812, 814 (5th Cir.1993). In order to establish fraudulent

---

**1.** The defendants' notice of removal states that CBS Broadcasting, Inc., is a corporation organized under the laws of the State of New York, and has its principal place of business in New York.

**2.** The notice of removal states that Media General Operations, Inc., is a corporation organized under the laws of the State of Delaware, and has its principal place of business in Virginia.

**3.** The notice of removal states that defendants Safer, Hewitt, Naphin and Breheny are all adult resident citizens of New York.

joinder, the removing parties must demonstrate either that no possibility exists that the plaintiff would be able to establish a cause of action against the non-diverse defendant under state law, or that an outright fraud exists in the plaintiffs' pleading of the facts. *Id.* In other words, the removing defendants bear the responsibility of demonstrating by clear and convincing evidence that the plaintiffs cannot establish any cause of action against Emmerich and Strittman or, alternatively, that the plaintiffs fraudulently pled the facts included in their complaint.

The Fifth Circuit has clearly described the procedure a district court should follow in deciding the issue of fraudulent joinder:

> The district court must ... evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. Moreover, the district court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.
>
> If, having assumed all of the facts set forth by the plaintiff to be true and having resolved all uncertainties as to state substantive law against the defendants, the district court should find that there is no possibility of a valid cause of action being set forth against the in-state defendant(s), only then can it be said that there has been a "fraudulent joinder." However, if there is even a possibility that a state court would find a cause of action stated against any one of the named in-state defendants on the facts alleged by the plaintiff, then the federal court must find that the in-state defendant(s) have been properly joined, that there is incomplete diversity, and that the case must be remanded to the state courts.

*B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549–50 (5th Cir.1981).

"[A] joinder is fraudulent if the facts asserted with respect to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of the plaintiff that there was joint liability." *Bolivar v. R & H Oil & Gas Co., Inc.,* 789 F.Supp. 1374, 1376–77 (S.D.Miss.1991). All ambiguities in the controlling law of a state must be resolved in favor of the plaintiff. *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990). The Fifth Circuit has made it abundantly clear, and the Court is mindful of the fact, that the district court need "not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so." *Dodson,* 951 F.2d at 42.

The fraudulent joinder and Rule 12(b)(6) standards appear similar. *Travis v. Irby,* 326 F.3d 644, 648 (5th Cir.2003). Under Rule 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002). Under the fraudulent joinder standard, the test is whether there is a "possibility that [the plaintiff] has set forth a valid cause of action." *Green v. Amerada Hess,* 707 F.2d 201, 205 (5th Cir.1983); *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995).

There is, however, a slight difference in the scope of inquiry for Rule 12(b)(6) and fraudulent joinder purposes. "For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments.... For fraudulent joinder, the district court *may* ... 'pierce the pleadings' and consider summary judgment-type evidence in the record ...." *Travis,* 326 F.3d at 648–49 (emphasis added) (citations omitted). The Fifth Circuit has cautioned that the dis-

trict court must still "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Id.* at 649 (citations omitted). "Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor.... The burden of persuasion on those who claim fraudulent joinder is a heavy one." *Id.* (citations omitted).

This case arises out of the television broadcast of "Jackpot Justice," a segment of defendant CBS's "60 Minutes" program which aired on November 24, 2002. The segment focused on multi-million dollar verdicts rendered in rural areas of Mississippi, particularly Jefferson County, and featured interviews with Wyatt Emmerich, a newspaper publisher and columnist from Jackson, Mississippi, and Beau Strittman, a florist from Fayette, Mississippi, the county seat of Jefferson County.

The plaintiffs served together in 1999 as jurors in a "Fen Phen" diet drug case in Jefferson County Circuit Court and rendered a widely publicized 150 million dollar verdict. The plaintiffs' complaint alleges that the "60 Minutes" program portrayed Jefferson County "as a leading purveyor of the state's system of 'jackpot justice,'" (Complaint, ¶ 26) and that the defendants "maliciously misconceived Jefferson County as a place where substantial verdicts are awarded effortlessly and ostensibly without an evidentiary basis." (Complaint, ¶ 28). The complaint also alleges that defendants Emmerich and Strittman maliciously made "representations, statements and/or opinions pertaining to the Jurors in [the "Fen Phen" case] and other cases, [which] reasonably imply false and defamatory facts not predicated upon disclosed, truthful facts known to Defendants." (Complaint, ¶¶ 28–29). The plaintiffs allege causes of action for libel, slander and defamation (count one); invasion of privacy (appropriation of another's identity for an unpermitted use)(count two); invasion of privacy (holding another to the public eye in a false light) (count three); gross negligence or intentional infliction of emotional distress (count four); malicious, reckless, wantonness, negligence or gross negligence (count five); and declaratory, equitable and/or injunctive relief (count six).

■ The issue before the Court is whether a possibility exists that the plaintiffs would be able to establish a cause of action against either Emmerich or Strittman under any of the claims alleged in their complaint.

I. DEFAMATION (Count One)

■ To establish a claim of defamation, the plaintiffs must prove the following:

(1) a false and defamatory statement was made concerning the plaintiff; (2) there was an unprivileged publication to a third party; (3) the publisher was negligent in publishing the defamatory statement; (4) the plaintiff suffered damages resulting from publication of the defamatory statement.

*Mitchell v. Random House, Inc.,* 703 F.Supp. 1250, 1255 (S.D.Miss.1988), *aff'd,* 865 F.2d 664 (5th Cir.1989). "To be actionable as defamation, the statements made must be false and must be clearly directed toward and be 'of and concerning [the] plaintiff.'" *Id.,* citing *Ferguson v. Watkins,* 448 So.2d 271, 275 (Miss.1984). "Moreover, to state a claim for defamation, it is necessary that the defamation be 'clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.'" *Id.* at 1256, quoting *Ferguson,* 448 So.2d at 275. Both the Fifth Circuit and the Mississippi Supreme Court have emphasized that these requirements must be "strictly enforced." *Mize v. Harvey Shapiro Enters.,*

714 F.Supp. 220, 224 (N.D.Miss.1989) ("The Fifth Circuit has recognized that [the 'of and concerning'] requirements are stringently applied by Mississippi courts and indicated that it will do the same.") (citing *Mitchell,* 865 F.2d at 669); *Ferguson,* 448 So.2d at 275. Under Mississippi law, "the trial court in a defamation case must make the threshold determination of whether the language in question is actionable." *Mitchell,* 703 F.Supp. at 1256; *see also Chatham v. Gulf Publ'g Co.,* 502 So.2d 647, 650 (Miss.1987) (court must determine, in first instance, whether statement at issue was "clearly directed" at plaintiff).

The following statements made by Wyatt Emmerich and Beau Strittman during interviews with defendant Morley Safer, and aired on "60 Minutes," are alleged by the plaintiffs to be defamatory:

*Emmerich:*

There are more lawsuits filed than there are inhabitants of Jefferson County. Something like a third of all of the pharmaceutical cases for some drugs have been tried there.

*Safer:*

Cases like the $150 million that was awarded to 5 plaintiffs whom a jury found were injured by a diet drug. In neighboring counties, the $100 million that was awarded to 10 people who took a heartburn pill.

It's not just drugs. One hundred fifty million to six plaintiffs who argued that they might someday become seriously ill because of asbestos exposure.

Even though many awards are reduced on appeal, many more are settled for undisclosed amounts, because companies now fear these Mississippi juries. Just what's behind these generous awards?

*Emmerich:*

Look at the jurors. These are disenfranchised people. These are people who have been left out of the system, who feel like, hey, stick it to the Yankee company. Stick it to the insurance companies. Stick it to the pharmaceutical companies.

The African–Americans feel like it's payback for disenfranchisement, and the red-necks, shall we say, it's, like, hey, get back— it's revenge for the Civil War.

So there's a lot of resentment, a lot of class anger, a lot of racial anger. It's very easy to weave this racial conflict and this class conflict into a big money pot for the attorneys.

("Jackpot Justice" Transcript, pp. 3–4)(portions quoted in Complaint, ¶ 28).

*Safer:*

Everyone in Fayette knows this man, a local florist, now a multimillionaire. But he doesn't want his name known nationally. He took the obesity drug Redux, and started complaining of chest pains, and was found to have a major blockage in his heart, which he says was caused by the drug.

After seeing an ad in a local newspaper seeking plaintiffs, he joined a suit against the manufacturer. He won't say how much he received in a settlement, but he admits he hit paydirt.

*Strittman:*

A 50–cent diet pill made a lot of people multimillionaires.

*Safer:*

A 50–cent diet pill?

*Strittman:*

Made a millionaire. Come a long way. You know, in the area that I'm from, a lot of people dream to be rich. With the diet pill company, it has helped them to become whatever they wanted to be.

("Jackpot Justice" Transcript, pp. 9–10)(portions quoted in Complaint, ¶ 29).

*Safer:*

But our Fayette florist says that jurors often feel that those big, fat, rich companies should pay up.

*Strittman:*

That they should award it to us. Yes, sir. The jury awarded these people this money, because they felt as if they were going to get a cut off of it.

*Safer:*

The jurors benefit? Is that what you're saying?

*Strittman:*

They benefit after court and everything is over with. Yes, sir.

*Safer:*

Uh-huh. On the quiet?

*Strittman:*

Mm-hmm. Under the table. Yeah.

("Jackpot Justice" Transcript, p. 13)(portions quoted in Complaint, ¶ 29).

The plaintiffs argue that the defendants' statements

represented to, suggested and/or implied that Plaintiffs disregarded their oath as citizens and jurors; that they engaged in major, criminal activity by accepting monies or other things of value to influence the result of certain, distinguishable trials, i.e., Fen phen; and that they obstructed justice. These Defendants further represented, suggested and/or implied that Plaintiffs were not persons/jurors of honesty, integrity, and moral character by the malicious characterization of them as "disenfranchised people" looking to get back at "Yankee Companies" and people "who have been locked out of the system." In fact, the entire CBS broadcast in issue, taken as a whole, casts Plaintiffs in a light that can best be described as outrageously inept, dishonest and criminal.

(Plaintiffs' Memorandum Brief, p. 8).

■ To determine whether the plaintiffs have stated a cause of action for defamation against Emmerich and Strittman,

as opposed to the other defendants, the Court must focus only on the four corners of what Emmerich and Strittman actually said in the portions of their interviews aired on the program. *Lawrence v. Evans,* 573 So.2d 695, 698 (Miss.1990) (in defamation action against a source for quotations attributed to him in a newspaper article, it would be error to put the source's words "in the context of the entire article as we would if [the] reporter ... and the newspaper ... were the defendants"). Statements by the media are not the subject of defamation claims against defendants whose statements were merely quoted in a newspaper article or aired on a television program. *Mann v. City of Tupelo,* 1995 WL 1945433, *11 (N.D.Miss. April 13, 1995). Although allegedly defamatory words "must be set in the context of the entire utterance," and "[t]heir complexion draws color from the whole," *Lawrence,* 573 So.2d at 698, "[t]his rule mandates consideration of the entire utterance of the declarant as distinguished from the entire news report or the entire news coverage." *Mann,* 1995 WL 1945433 at *12.

■ As noted previously, the requirement that allegedly defamatory statements be "clearly directed toward" and "of and concerning" the plaintiffs is strictly enforced by the Mississippi courts. *See, e.g., McCullough v. Cook,* 679 So.2d 627, 631 (Miss.1996) (even if subject statements were false, plaintiff must still establish that words employed were "clearly directed toward the plaintiff"); *Blake v. Gannett Company, Inc.,* 529 So.2d 595, 603 (Miss. 1988) (if statements "are not clearly directed toward (concerning) the plaintiff, this Court does not reach the question of whether those statements are defamatory").

In *Mitchell, supra,* the court, applying Mississippi law, held that the plaintiff's claim for defamation failed as a matter of

law. In response to the plaintiff's argument that without further development of the facts, a decision on the viability of her defamation claim would be premature, the court quoted R. Sack, *Libel, Slander and Related Problems* (1980):

Dismissal of defamation suits for failure of the complaint to state a cause of action or to state a claim upon which relief may be granted occurs with relative frequency. One substantial factor is that the communication complained of is usually before the court at the outset; indeed in many jurisdictions it is required that complaints themselves set forth the allegedly defamatory statement. . . .

The trial court may therefore, at the earliest stages, make sound determinations as to issues relating to the communication of which complaint is made. Thus courts routinely consider on motions to dismiss issues such as whether the statement at bar . . . is 'of and concerning' the plaintiff . . . .

R. Sack, *Libel, Slander and Related Problems*, 533–34, quoted in *Mitchell*, 703 F.Supp. at 1258 n. 10. *See also Lenoir v. Tannehill*, 660 F.Supp. 42, 44 (S.D.Miss. 1986); Miss.Code Ann. § 11–7–53 (1972) (plaintiff in defamation action required under Mississippi law to plead "words or matter" constituting alleged defamation), cited in *Mitchell*, 703 F.Supp. at 1258 n. 10.

In this case, the statements made by defendants Emmerich and Strittman, and alleged by the plaintiffs to be defamatory, do not refer to any of the plaintiffs by name. It is generally recognized, however, that a plaintiff "need not be mentioned by name so long as he is pointed to by description or other circumstance tending to identify him as an object of the [defamatory] language." *Klauder v. Philadelphia Newspapers, Inc.*, 66 Pa. D. & C.2d 271, 274 (Pa.Com.Pl.1973), and cases cited

therein; *see also* 54 A.L.R.4th 746, Annotation: Libel and Slander: Sufficiency of Identification of Allegedly Defamed Party. In *Montgomery Ward & Co. v. Skinner*, 200 Miss. 44, 25 So.2d 572 (1946), the Mississippi Supreme Court noted that "it is incumbent upon a plaintiff seeking compensation for a libel or slander to show that the statement complained of was made with reference to him, but as stated in 33 Am.Jur. 243, § 263, 'He may discharge this burden by proof of relevant circumstances' . . . ." *Id.* at 580. And in *Conroy v. Breland*, 185 Miss. 787, 189 So. 814 (1939), it was recognized that extrinsic facts may make it clear that a statement refers to a particular individual. *Id.* at 815, citing Restatement of Torts, § 564, and comments thereunder.

The Restatement (Second) of the Law of Torts provides that "[a] defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer." Restatement (Second) of Torts, § 564. Comment b further states:

It is not necessary that the plaintiff be designated by name; it is enough that there is such a description of or reference to him that those who hear or read reasonably understand the plaintiff to be the person intended. Extrinsic facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody. . . . It is not necessary that everyone recognize the other as the person intended; it is enough that any recipient of the communication reasonably so understands it. However, the fact that only one person believes that the plaintiff was referred to is an important factor in determining the reasonableness of his belief. If the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must ap-

pear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff.

Restatement (Second) of Torts, § 564, comment b.

A reading of the transcript confined to Emmerich's and Strittman's statements reveals no specific reference to the plaintiffs, by name or otherwise. The plaintiffs argue, however, that Emmerich and Strittman, while not naming any of the individual jurors in the 1999 "Fen Phen" case, directed their statements "at all members of a small class or group." (Plaintiffs' Memorandum Brief, p. 9). According to the plaintiffs, this small class or group consists of the twelve jurors in the 1999 Fen Phen case.

In *Skinner*, the Mississippi Supreme Court, citing the Restatement of Torts, noted the possibility of liability in a defamation action where the reference is not to an individual but to a small group, as distinguished from a general class, where the class is so small "as to indicate that the plaintiff is the person intended or at least to cast such grave suspicion upon him as to be defamatory of him." *Skinner*, 25 So.2d at 580, citing Restatement of Torts, § 564, and comments thereunder. The Restatement (Second) of the Law of Torts provides:

> One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it, but only if,
> (a) the group or class is so small that the matter can reasonably understood to refer to the member, or
> (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

Restatement (Second) of Torts, § 564A. The comments note that "[a]s a general rule no action lies for the publication of defamatory words concerning a large group or class of persons." Restatement (Second) of Torts, § 564A, comment a. On the other hand,

> [w]hen the group or class defamed is sufficiently small, the words may reasonably be understood to have personal reference and application to any member of it, so that he is defamed as an individual. In this case he can recover for defamation. Thus the statement that "That jury was bribed" may reasonably be understood to mean that each of the twelve jurymen has accepted a bribe. It is not possible to set definite limits as to the size of the group or class, but the cases in which recovery has been allowed usually have involved numbers of 25 or fewer.

Restatement (Second) of Torts, § 564A, comment b.

Individual jurors have been held to have a cause of action for defamation based on a reference to the jury on which they served. In *Carter v. King*, 174 N.C. 549, 94 S.E. 4 (1917), the Supreme Court of North Carolina held that jurors could bring a defamation action for "words, oral or written, tending to impeach the integrity and conduct of jurors in the discharge of their duty." *Id.* at 6, citing 25 Cyc. Law & Proc., *Libel & Slander* 352 (1907). The defendant in *Carter* had referred specifically to the jury on which the plaintiff served, which had been unable to agree on a verdict and was split eleven to one. The defendant had written in a letter that the jurors' inability to reach a verdict "was due entirely to whisky and the appeal made to their prejudice," and he had "stated publicly that there was 1 man on the jury that was not bribed." *Id.* at 5. The court found that this statement naturally implied that the other eleven jurors were bribed, and that the plaintiff was one of the eleven. *Id.* The plaintiff could main-

tain his action although there was no reference to him individually. "It was as harmful to libel and slander the plaintiff collectively as one of the 11 jurors as it would have been to have libeled him individually." *Id.* at 6. *See also* cases collected at 52 A.L.R.4th 618, Annotation: Defamation of Class or Group as Actionable by Individual Member, § 20 (Jurors).

■ Although Emmerich and Strittman refer to "the jurors" and "the jury" respectively, they never refer to any particular jury. The statements therefore were not "clearly directed toward" nor "of and concerning" the jurors in the 1999 Fen Phen case. At best, they were of and concerning jurors in Jefferson County. Thus, they lack the specificity required to impose liability. "[V]ague, general references to a comparatively large group do not constitute actionable defamation." 52 A.L.R.4th 618, § 23, citing *Michigan United Conservation Clubs v. CBS News, Div. Of CBS, Inc.,* 665 F.2d 110 (6th Cir.1981).

"In balancing the societal interest in free speech and press against the individual interest in reputation, courts have chosen not to limit the former except to prevent injury from defamatory statements reasonably susceptible of a definite application to a particular individual." *Scelfo v. Rutgers University,* 116 N.J.Super. 403, 282 A.2d 445 (1971), citing *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

> Where the group is small there is a great likelihood that others will understand that the defendant intended to attribute certain qualities, beliefs, or acts to each member. Moreover, others are more likely to believe the statement to be based on information concerning each particular individual rather than that it is a generalization drawn from the observation of a few. As the group becomes larger, it is less likely that the statement will be understood as referring to each member of the group and its character as a generalization becomes clearer.

*Developments in the Law—Defamation,* 69 Harv.Law.Rev. 875, 894 (1956). "Language which would be read seriously if written as to an individual might not be capable of serious application to each member of a large group; that which is general may become vague; that which is specific may become ridiculously extravagant." *Golson v. Hearst Corporation,* 128 F.Supp. 110, 112 (S.D.N.Y.1954) (citations omitted).

The plaintiff in *Edmonds v. Delta Democrat Publishing Company,* 230 Miss. 583, 93 So.2d 171 (1957), was Executive Secretary of the United Dry Association, a prohibition group. He brought two claims for defamation against the defendant based on two separate newspaper editorials. The first mentioned the plaintiff by name. The second referred only to the "Drys," which the Mississippi Supreme Court found referred "to no particular person, but to ... those who advocated no change in the prohibition laws, which included a majority of the qualified voters participating in the liquor referendum." *Id.* at 174. Because the plaintiff was not sufficiently identified in the second editorial, that claim was not actionable. *Id.*

As a matter of law, an alleged defamation against all jurors in Jefferson County can have no personal application to any individual juror. The only way a Jefferson County juror can maintain suit is if "the circumstances of publication reasonably give rise to the conclusion that there is particular reference to" that juror. Restatement (Second) of Torts, § 564A.

■ As noted previously, Mississippi law recognizes the right of a plaintiff to introduce evidence of relevant circumstances and extrinsic facts to show that he was in fact the person defamed. *Mont-*

*gomery Ward & Co. v. Skinner,* 25 So.2d at 580; *Conroy v. Breland,* 189 So. at 815. However, the plaintiffs have not alleged the existence of any such evidence with regard to their claims against Emmerich and Strittman. The affidavits submitted by the plaintiffs do not address their claims against these two defendants. Plaintiff Jerry Scott, Sr., states in his affidavit that he has been "slandered and defamed" by "[t]he CBS broadcast." (Scott Affidavit, ¶ 6). Edmon O. Jackson, a resident of Jefferson County, states in his affidavit that he heard the "Jackpot Justice" broadcast, and that he "personally know[s] that Mr. Jerry Scott Sr. was one of the jurors in question." (Jackson Affidavit). Neither affidavit alleges any facts to demonstrate that Emmerich's or Strittman's statements specifically were "of and concerning" or "clearly directed toward" the plaintiffs.

"The real test in weighing identification is whether some nexus exists between plaintiff and the allegedly defamatory language." *Klauder,* 66 Pa. D. & C.2d at 275. In the instant case, no connection can be shown between the plaintiffs and Emmerich's and Strittman's statements other than the fact that the plaintiffs served as jurors in Jefferson County. While Emmerich and Strittman referred to juries and jurors in general, their statements lack the requisite specificity of reference to any of the six named plaintiffs or the jury on which they served. Therefore, it could not have reasonably been believed by some viewer of the program that Emmerich's or Strittman's statements were intended to refer to the plaintiffs.

Because the plaintiffs' complaint fails to allege facts sufficient to establish that Emmerich's or Strittman's statements were "of and concerning" or "clearly directed toward" the plaintiffs, there is no possibility of recovery for defamation against either of the non-diverse defendants.

## II. INVASION OF PRIVACY (Counts Two and Three)

Mississippi has recognized the existence of four distinct theories of invasion of privacy: (1) the intentional intrusion upon the solitude or seclusion of another; (2) the appropriation of another's identity for an un-permitted use; (3) the public disclosure of private facts; or (4) holding another to the public eye in a false light. *Deaton v. Delta Democrat Publ'g Co.,* 326 So.2d 471, 473 (Miss.1976). In count two of their complaint, the plaintiffs allege that the defendants "intentionally, deliberately, wilfully, knowingly, and recklessly used or referenced Plaintiffs' identity or name without their permitted authority," (Complaint, ¶ 43) and held them out "in public ridicule [and] scorn and cast [them] in a light of dishonesty and corruption." (Complaint, ¶ 44). The defendants are alleged to have done so by making "detailed reference to the diet drug case in Jefferson County and that particular Jury." (Complaint, ¶ 43). In count three, the plaintiffs allege that the defendants held them out "in a false light … as being dishonest, untrustworthy, willing to commit a crime in exchange for a verdict, obstructionists of justice and other disgraceful and criminal things." (Complaint, ¶ 47).

In order to recover under a misappropriation of identity theory, the plaintiffs must, by definition, show that they were identified by the defendants. Similarly, in order to recover under a false light theory, they must show that the defendants' statements were "clearly directed at them." *Mize,* 714 F.Supp. at 225; *Mitchell,* 703 F.Supp. at 1259 (noting the similarity of false light privacy and defamation claims). As discussed above in connection with the plaintiffs' defamation claim, Emmerich and Strittman made no reference to the plaintiffs, nor to the par-

ticular jury on which they served. The complaint therefore fails to state a claim against Emmerich or Strittman for invasion of privacy under either theory, and there is no possibility of recovery under counts two and three.

## III. REMAINING CLAIMS (Counts Four, Five and Six)

Because the plaintiffs have not stated a claim against defendants Emmerich or Strittman for defamation or invasion of privacy, they cannot state a claim against either defendant under any of the remaining counts, which are derivative of the defamation and invasion of privacy claims.

■ Count four, for negligent and/or intentional infliction of emotional distress, simply alleges that the defendants' actions caused the plaintiffs to suffer emotional distress, without any additional factual allegations. One element of an intentional infliction of emotion distress claim is that the defendant's conduct be "extreme and outrageous," *i.e.,* capable of arousing resentment in an average member of the community and leading him to exclaim "outrageous." *Burris v. South Central Bell Telephone Co.,* 540 F.Supp. 905, 909 (S.D.Miss.1982). Since the comments of Emmerich and Strittman are not capable of being understood as referring to the plaintiffs, an average member of the community could not reasonably resent the statements nor proclaim them "outrageous." One requirement of a negligent infliction of emotional distress claim is that injury to the plaintiff be reasonably foreseeable. Since one could not reasonably understand Emmerich's and Strittman's comments to refer to the plaintiffs, one could not reasonably foresee an injury based on those comments. Count five is directed toward defendant CBS and others responsible for the production and broadcast of the program. Count six simply

seeks a public apology and injunctive relief.

The Court concludes, based on the findings above, that the plaintiffs have failed to assert claims against the non-diverse defendants for which relief may be granted in state court. Therefore, the non-diverse defendants, Emmerich and Strittman, shall be dismissed from this case, and the plaintiffs' motion to remand shall be denied. Regarding the affidavits submitted by the plaintiffs and considered by the Court, the plaintiffs' motion to submit that additional evidence is granted. Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' motion to submit additional evidence (docket entry 10–2) is GRANTED;

FURTHER ORDERED that the plaintiffs' motion to remand (docket entry 5) is DENIED;

FURTHER ORDERED that defendants Wyatt Emmerich and Beau Strittman are hereby dismissed from this case with prejudice.

Counsel are directed to contact Magistrate Judge Sumner so that a scheduling order may be entered.